UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                         :

UNITED STATES OF AMERICA       :

        -v.-             :

RAJARENGAN RAJARATNAM,      :
   a/k/a "Rengan Rajaratnam,"  :

       Defendant.    :

- - - - - - - - - - - - - - - x

**SEALED**
**INDICTMENT**

13 Cr. ____

**13 CRIM 211**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 20 2013

### COUNT ONE

(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Entities and Individuals

1. At all times relevant to this Indictment, the Galleon Group ("Galleon") operated a family of hedge funds in New York, New York. Galleon Management, LP ("Galleon Management") managed a number of these hedge funds, including the Galleon Technology Offshore Fund and the Galleon Diversified Fund (collectively, the "Galleon Tech Funds"), the Galleon Crossover Fund, and the Galleon Buccaneer Fund.

2. At all times relevant to this Indictment, RAJARENGAN RAJARATNAM, a/k/a "Rengan Rajaratnam," the defendant (hereinafter, "RENGAN RAJARATNAM"), worked at Galleon as a portfolio manager for the Galleon Crossover Fund and the Galleon Buccaneer Fund. In addition, at all relevant times, RENGAN RAJARATNAM maintained a personal brokerage account at Fidelity Investments (the "Fidelity Brokerage Account").

**Judge Buchwald**

3.   At all times relevant to this Indictment, Raj Rajaratnam was the founder and head of Galleon.  In addition, Raj Rajaratnam was the brother of RENGAN RAJARATNAM, the defendant. In addition, at various times, Raj Rajaratnam was a portfolio manager for, among other Galleon funds, the Galleon Tech Funds and the Galleon Crossover Fund.

4.   At all times relevant to this Indictment, Clearwire Corporation ("Clearwire") was a publicly-traded provider of wireless high-speed Internet service based in Kirkland, Washington.  Clearwire's common stock traded on the Nasdaq Stock Market under the ticker symbol "CLWR."

5.   At all times relevant to this Indictment, Rajiv Goel, a co-conspirator not named as a defendant herein, worked at Intel Corporation ("Intel").  Goel worked in Intel's Treasury Group and was responsible for assisting Intel Capital, the investment arm of Intel, with its strategic investment decisions. At all times relevant to this Indictment, Goel owed a duty of trust and confidence to Intel to maintain the confidentiality of its non-public information.

6.   At all times relevant to this Indictment, Advanced Micro Devices, Inc. ("AMD") was a publicly-traded designer and producer of semiconductors and other high-technology products based in Sunnyvale, California.  AMD's common stock traded on the New York Stock Exchange under the ticker symbol "AMD."

7.   At all times relevant to this Indictment, Anil Kumar, a co-conspirator not named as a defendant herein, worked at McKinsey & Company, Inc. ("McKinsey"), a global management consulting firm, as a senior partner and director.  In that capacity, Kumar advised various clients in the technology industry concerning their business strategies, including AMD.  At all times relevant to this Indictment, Kumar owed a duty of trust and confidence to McKinsey and AMD to maintain the confidentiality of their non-public information.

## The Insider Trading Scheme

8.   In or about 2008, RENGAN RAJARATNAM, the defendant, Raj Rajaratnam, and others known and unknown, participated in a scheme to defraud by obtaining, sharing and disclosing material, nonpublic information belonging to publicly-traded companies ("Inside Information") and/or executing securities transactions on the basis of Inside Information.  RENGAN RAJARATNAM and Raj Rajaratnam engaged in this conduct for the purpose of executing profitable securities transactions in RENGAN RAJARATNAM's Fidelity Brokerage Account, the Galleon Buccaneer Fund, the Galleon Crossover Fund, and the Galleon Tech Funds, with knowledge that the Inside Information had been disclosed in violation of duties of trust and confidence.

3

**Insider Trading in Clearwire**

9.    In or about 2008, RENGAN RAJARATNAM, the defendant, Raj Rajaratnam, and others known and unknown, participated in a scheme to defraud by executing securities transactions based on Inside Information relating to Intel and Clearwire.  The means by which RENGAN RAJARATNAM and Raj Rajaratnam carried out the fraudulent scheme were as follows: (i) Rajiv Goel obtained Inside Information from Intel relating to Intel's plans to make a $1 billion strategic investment in Clearwire in exchange for an equity ownership position in Clearwire, as described in further detail below (the "Intel Inside Information"); (ii) Goel disclosed the Intel Inside Information to Raj Rajaratnam in violation of fiduciary and other duties of trust and confidence that Goel owed to Intel; (iii) Raj Rajaratnam, knowing that Goel had disclosed the Intel Inside Information to him in violation of his duties to Intel, further disclosed the Intel Inside Information to RENGAN RAJARATNAM; (iv) RENGAN RAJARATNAM and Raj Rajaratnam purchased Clearwire common stock on the basis of the Intel Inside Information.

10.    Specifically, in or about March 2008, Rajiv Goel learned from others at Intel about Intel's non-public plans to participate in a multi-party transaction in which (i) Intel planned to invest $1 billion into Clearwire; (ii) Sprint Nextel Corporation ("Sprint") would contribute its wireless spectrum to

4

Clearwire; (iii) other parties to the transaction included Comcast
Corporation ("Comcast"), Time Warner Cable, Inc. ("Time Warner
Cable"), and Google, Inc. ("Google"); (iv) Clearwire would emerge
as a new wireless communications company owned by, among others,
Intel (with 10 percent ownership of the new Clearwire entity), the
existing public shareholders of Clearwire (with 16 percent
ownership of the new entity), Craig McCaw, the founder of
Clearwire (with 5 percent ownership of the new entity); and (v)
the new entity would have $3.5 billion in cash separate and apart
from the cash position of the existing Clearwire entity.

   11.   In or about March 2008, Rajiv Goel disclosed the
Intel Inside Information to Raj Rajaratnam for the purpose of
enabling Raj Rajaratnam to execute securities transactions and
earn profits.  Goel disclosed the Intel Inside Information, all of
which was non-public when he did so, in violation of fiduciary and
other duties of trust and confidence that Goel owed to Intel.  For
example, on or about March 20, 2008, at approximately 9:11 p.m.,
Goel advised Raj Rajaratnam that Intel's board had "approved this
deal," the day before, referring to the transaction described in
paragraph 10.

   12.   In or about March 2008, Raj Rajaratnam further
disclosed the Intel Inside Information to RENGAN RAJARATNAM, the
defendant, so that RENGAN RAJARATNAM could use it to execute
securities transactions and earn profits.

13.   The next trading day after Rajiv Goel's March 20, 2008 call to Raj Rajaratnam was on or about March 24, 2008. Beginning on or about March 24, 2008, through and including on or about April 4, 2008, in his Fidelity Brokerage Account, RENGAN RAJARATNAM, the defendant, purchased at least approximately 72,000 shares of Clearwire common stock based, in whole or in part, on the Intel Inside Information, with knowledge that the Intel Inside Information had been improperly obtained.

14.   From on or about March 24, 2008, through and including on or about March 26, 2008, the Galleon Crossover Fund, whose portfolio managers included RENGAN RAJARATNAM, the defendant, and Raj Rajaratnam, purchased at least approximately 120,000 shares of Clearwire common stock based, in whole or in part, on the Intel Inside Information, with knowledge that the Intel Inside Information had been improperly obtained.

15.   From on or about March 24, 2008, through and including on or about March 25, 2008, Raj Rajaratnam caused the Galleon Tech Funds to buy at least approximately 261,800 shares of Clearwire based, in whole or in part, on the Intel Inside Information.

16.   On or about March 25, 2008, after the U.S. stock markets had closed, the *Wall Street Journal* published an online news article stating that Comcast and Time Warner were in discussions with Clearwire and Sprint regarding the creation of a

joint venture to operate a high-speed nationwide wireless network. The *Journal* article indicated that Sprint and Clearwire were "trying to raise at least $3 billion" for the joint venture and that "Intel Corp. has signaled a willingness to put in about $1 billion or more."

17.   On or about March 25, 2008, at approximately 8:22 p.m., RENGAN RAJARATNAM, the defendant, called Raj Rajaratnam to complain about the *Wall Street Journal* article.   Referring to the Intel Inside Information, RENGAN RAJARATNAM said to Raj Rajaratnam, "We're fucked man" because the "Clearwire stuff" had "just hit the *Wall Street Journal*."   RENGAN RAJARATNAM explained that the *Journal* article was "short on details, but they kind of say, you know, they're looking to raise as much as three billion, but they don't have any of the equity split.   But they named . . . Comcast, they named Time Warner, Clearwire, Sprint."   Raj Rajaratnam replied, "O.K., shit."   RENGAN RAJARATNAM then said, "So, I don't know how much you got in today," referring to Raj Rajaratnam's purchases of Clearwire stock that day, "but I think [Clearwire's share price] is gonna rip [rise sharply] tomorrow."

18.   In fact, Clearwire's share price did rise sharply in response to the *Wall Street Journal* article.   On or about March 26, 2008, the morning after the article was published, Clearwire common stock opened at a price of $15.85 per share, up

approximately 18 percent ($2.46) over the previous day's closing price.

19.   From on or about March 26, 2008 through and including on or about April 21, 2008, RENGAN RAJARATNAM, the defendant, sold his entire position of 72,000 shares of Clearwire common stock in his Fidelity Brokerage Account for a total profit of at least approximately $101,070.

20.   From on or about March 26, 2008, through and including on or about April 10, 2008, the Galleon Crossover Fund, whose portfolio managers included RENGAN RAJARATNAM, the defendant, and Raj Rajaratnam, sold its entire position of approximately 120,000 shares of Clearwire common stock for a total profit of at least approximately $231,539.

21.   From on or about March 26 through and including on or about April 18, 2008, Raj Rajaratnam caused the Galleon Tech Funds to sell their entire position of 261,800 shares of Clearwire common stock for a total profit of at least approximately $851,724.

## Insider Trading in AMD

22.   From at least in or about March 2008, through and including in or about October 2008, RENGAN RAJARATNAM, the defendant, Raj Rajaratnam, and others known and unknown, participated in a scheme to defraud by executing securities transactions based on Inside Information obtained from AMD.  The

means by which RENGAN RAJARATNAM, Raj Rajaratnam and others
carried out the fraudulent scheme were as follows: (i) Anil Kumar,
a McKinsey partner, obtained Inside Information from McKinsey's
client, AMD, relating to a significant transaction wherein AMD
planned to spin off its manufacturing or "fab" business into a new
entity, and two investment companies wholly owned by the Abu Dhabi
Government (collectively, the "Abu Dhabi Investment Authority")
would invest up to six to eight billion dollars in the new entity
and would separately invest cash in AMD (hereinafter, the "AMD
Inside Information"); (ii) Kumar disclosed the AMD Inside
Information to Raj Rajaratnam in violation of fiduciary and other
duties of trust and confidence that Kumar owed to McKinsey and
AMD; (iii) Raj Rajaratnam, with knowledge that Kumar obtained the
AMD Inside Information in violation of his duties to McKinsey,
disclosed the Inside Information to RENGAN RAJARATNAM; (iv) Raj
Rajaratnam caused the Galleon Buccaneer Fund to buy 250,000 shares
of AMD common stock on behalf of RENGAN RAJARATNAM based on the
AMD Inside Information, with RENGAN RAJARATNAM's concurrence; and
(v) Raj Rajaratnam caused the Galleon Tech Funds to buy AMD common
stock based on the AMD Inside Information.

23.   Specifically, in or about 2008, AMD retained
McKinsey to provide consulting services in connection with AMD's
negotiations with the Abu Dhabi Investment Authority concerning
its proposed transaction with AMD.  Beginning in or about 2008,

Anil Kumar worked on this matter for AMD, learned the AMD Inside Information, and disclosed it to Raj Rajaratnam.  For example, on or about August 15, 2008, at approximately 3:34 a.m., Kumar received an email from a McKinsey colleague stating that AMD and the Abu Dhabi Investment Authority had "a handshake agreement on the deal."  Later that day, at approximately 11:04 a.m., Kumar told Raj Rajaratnam by telephone that "yesterday" AMD and the Abu Dhabi Investment Authority had "shaken hands and said that they're going ahead with the deal" in which the Abu Dhabi Investment Authority would invest "six to eight billion" dollars.  Kumar said to Raj, "[Y]ou can now just buy" AMD stock.

24.  On or about August 15, 2008, Raj Rajaratnam bought at least approximately three million shares of AMD common stock for the Galleon Tech Funds based, in whole or in part, on the AMD Inside Information.  Over the next several weeks, Raj Rajaratnam continued to buy millions of additional shares of AMD before on or about October 7, 2008, when the AMD-Abu Dhabi Investment Authority deal was announced.

25.  On or about August 15, 2008, Raj Rajaratnam provided AMD Inside Information to RENGAN RAJARATNAM, the defendant.  At approximately 2:02 p.m., Raj Rajaratnam told RENGAN RAJARATNAM, "I just heard that . . . AMD had a handshake with the . . . Arabs. . . . The Arabs to put [in] six billion dollars."  In addition, Raj Rajaratnam told RENGAN RAJARATNAM that he had bought

shares of AMD common stock, and that he was "buying two fifty" –
meaning, 250,000 shares of AMD – "for you, OK?"  Rengan replied,
"Alright, thanks a lot man, I appreciate it."

26.   Later that day, RENGAN RAJARATNAM, the defendant,
and Raj Rajaratnam spoke again not only about the AMD Inside
Information but also about the affirmative efforts that RENGAN
RAJARATNAM was making to cultivate a second source of inside
information at McKinsey besides Anil Kumar: a new McKinsey partner
who was Rengan's Stanford Business School colleague and Kumar's
protégé at McKinsey (hereinafter, "McKinsey Partner A").
Specifically, on two telephone calls at approximately 5:32 p.m.
and 5:41 p.m. on or about August 15, 2008, RENGAN RAJARATNAM
advised Raj Rajaratnam that he had just finished a meeting with
McKinsey Partner A in which McKinsey Partner A "spilled his beans"
and "volunteered the information about the investments" in AMD.
Raj Rajaratnam suggested, "[W]hat we wanna do is . . . get him and
then have access to, you know, be able to chat with him" about
other Inside Information.  Raj Rajaratnam asked RENGAN RAJARATNAM,
"[H]e is a little dirty, right?"  RENGAN RAJARATNAM responded,
"[H]e's a little dirty," and cited the fact that McKinsey Partner
A had confirmed the AMD investment during their meeting earlier
that day.  RENGAN RAJARATNAM further reported that when he had
asked McKinsey Partner A what other stocks McKinsey Partner A
liked, McKinsey Partner A said, "'You know, the problem is all my

11

best ideas . . . are inside information.'"  RENGAN RAJARATNAM
responded to McKinsey Partner A, jokingly, "'[Y]ou know, that's
not a problem I'm sure we can hire [your wife] as a . . .
consultant for Galleon.'"  In response, McKinsey Partner A said,
"'[L]et me think about that.'"  RENGAN RAJARATNAM summarized the
situation for Raj Rajaratnam as follows:  McKinsey Partner A was
"definitely, you know, thinking about playing ball."

     27.  Later that same day, RENGAN RAJARATNAM, the
defendant, and Raj Rajaratnam further discussed RENGAN
RAJARATNAM's efforts to obtain additional Inside Information from
McKinsey Partner A.  Specifically, on August 15, 2008, at
approximately 6:28 p.m., RENGAN RAJARATNAM told his brother that,
in his conversation with McKinsey Partner A earlier that day,
RENGAN RAJARATNAM was trying to "pump information out of my
friend."  Raj Rajaratnam replied, "I understand what you're
doing[.]"  A few seconds later, referring to McKinsey Partner A,
RENGAN RAJARATNAM said, "Scumbag, everybody is a scumbag."

     28.  On or about August 19, 2008, RENGAN RAJARATNAM, the
defendant, had another conversation with McKinsey Partner A about
the AMD Inside Information and then reported the conversation back
to Raj Rajaratnam.  Specifically, at approximately 1:02 p.m. and
1:13 p.m. on August 19, 2008, RENGAN RAJARATNAM reported McKinsey
Partner A's statement that, while there was some information in
the marketplace about a possible transaction involving AMD, the

"stories he's [McKinsey Partner A's] been reading expect [that the
outside investment would be] just enough cash to cover the fabs,"
when in fact the outside investment would include "extra capital,"
a fact that McKinsey Partner A thought would "catch people's
attention" when it became public.  In addition, RENGAN RAJARATNAM
further described to Raj Rajaratnam his efforts to get McKinsey
Partner A to "give me dirt," and referred again to McKinsey
Partner A as a "scumbag[]."  Raj Rajaratnam agreed that "we've got
to milk this guy and get him comfortable."

    29.  The concerted efforts of RENGAN RAJARATNAM, the
defendant, and Raj Rajaratnam to cultivate McKinsey Partner A as a
source of Inside Information at McKinsey independent of Anil Kumar
was made more difficult, however, by the close relationship
between McKinsey Partner A and Kumar.  McKinsey Partner A
repeatedly told Kumar about his conversations with RENGAN
RAJARATNAM; Kumar then complained to Raj Rajaratnam about Rengan's
overtures.  In response to this situation, on or about August 19,
2008, at approximately 1:02 p.m., Raj Rajaratnam suggested a
tactic that RENGAN RAJARATNAM could use to get additional Inside
Information from McKinsey Partner A while reducing the risk that
McKinsey Partner A would "go back to Anil [Kumar]."  Specifically,
Raj Rajaratnam urged RENGAN RAJARATNAM to share certain details
about the AMD deal while asking McKinsey Partner A to "protect"
RENGAN RAJARATNAM as a source, so that McKinsey Partner A would be

13

more willing to share additional details with RENGAN RAJARATNAM.

30.   As it happened, this approach had the same result:
McKinsey Partner A again reported the overtures to Anil Kumar.
Specifically, on or about October 2, 2008, RENGAN RAJARATNAM, the
defendant, called McKinsey Partner A and shared certain details
about the AMD-Abu Dhabi transaction.   McKinsey Partner A reported
the conversation back to Kumar, who then called Raj Rajaratnam to
complain.   Specifically, on or about October 3, 2008, at
approximately 7:52 a.m., Kumar called Raj Rajaratnam and said:

> Raj, Rengan called [McKinsey Partner A] yesterday
> and told him that he knew all about the deal next
> week[.]
>
> . . .
>
> This completely unnerved [McKinsey Partner A], you
> know. . . . I don't think other guys can handle
> this.  Let's ask him [RENGAN RAJARATNAM] to be a
> little discreet about these type of things.

31.   On October 7, 2008, at approximately 8:00 a.m., AMD
announced the spin off its manufacturing operations and the Abu
Dhabi Investment Authority's investment in the manufacturing
operations and AMD itself.   When the market opened that day, AMD
common stock opened at $5.27 per share, up approximately 25
percent ($1.04) over the previous day's closing price of $4.23 per
share.

32.   As a result of the overall market decline during
the second half of 2008, the Galleon Tech Funds and the Galleon

14

Buccaneer Fund did not realize profits from trades based on the
AMD Inside Information; indeed, these funds sold AMD shares for a
loss.

### The Conspiracy

33.   In or about 2008, in the Southern District of New
York and elsewhere, RENGAN RAJARATNAM, the defendant, Raj
Rajaratnam, and others known and unknown, willfully and knowingly
did combine, conspire, confederate and agree together and with
each other to commit offenses against the United States, to wit,
securities fraud, in violation of Title 15, United States Code,
Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations,
Sections 240.10b-5 and 240.10b5-2.

### Object of the Conspiracy

34.   It was a part and an object of the conspiracy that
RENGAN RAJARATNAM, the defendant, Raj Rajaratnam, and others known
and unknown, willfully and knowingly, directly and indirectly, by
the use of the means and instrumentalities of interstate commerce,
and of the mails, and of facilities of national securities
exchanges, would and did use and employ, in connection with the
purchase and sale of securities, manipulative and deceptive
devices and contrivances in violation of Title 17, Code of Federal
Regulations, Section 240.10b-5 by: (a) employing devices, schemes
and artifices to defraud; (b) making untrue statements of material
fact and omitting to state material facts necessary in order to

15

make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

### Means and Methods of the Conspiracy

35.  Among the means and methods by which RENGAN RAJARATNAM, the defendant, Raj Rajaratnam, and others known and unknown, would and did carry out the conspiracy were the following:

a.  Anil Kumar and Rajiv Goel, who had access to Inside Information, improperly disclosed that Inside Information to Raj Rajaratnam with the understanding that the Inside Information would be used for the purpose of purchasing or selling securities in violation of: (i) the fiduciary and other duties of trust and confidence that they owed to their respective employers and/or their clients; (ii) the expectations of confidentiality of their respective employers; and (iii) their respective employers' written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b.  Raj Rajaratnam shared certain of this Inside Information with RENGAN RAJARATNAM, all for the purpose of engaging in profitable securities transactions, and with knowledge

16

that the Inside Information had been disclosed in violation of fiduciary and other duties of trust and confidence.

      c.   RENGAN RAJARATNAM and Raj Rajaratnam, while in possession of the Inside Information that had been improperly disclosed in violation of duties owed to public companies, purchased and sold securities based, in whole or in part, on Inside Information and thereby received illegal profits.

### Overt Acts

      36.   In furtherance of the conspiracy and to effect the illegal object thereof, RENGAN RAJARATNAM, the defendant, and his co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

      a.   In or about March 2008, Raj Rajaratnam provided RENGAN RAJARATNAM with the Intel Inside Information.

      b.   In or about March 2008, RENGAN RAJARATNAM purchased Clearwire common stock in his Fidelity Brokerage Account based on the Intel Inside Information.

      c.   In or about March 2008, in New York, New York, the Galleon Crossover Fund, whose portfolio managers included RENGAN RAJARATNAM and Raj Rajaratnam, purchased Clearwire common stock based on the Intel Inside Information.

      d.   In or about March 2008, in New York, New York, Raj Rajaratnam caused the Galleon Tech Funds to purchase Clearwire common stock based on the Intel Inside Information.

17

e.   In or about August 2008, Raj Rajaratnam provided RENGAN RAJARATNAM with the AMD Inside Information.

f.   In or about August 2008, in New York, New York, Raj Rajaratnam caused the Galleon Tech Funds to purchase shares of AMD common stock.

(Title 18, United States Code, Section 371.)

**COUNTS TWO THROUGH SEVEN**

(Securities Fraud)

The Grand Jury further charges:

37.   The allegations contained in paragraphs 1 through 32 and 35 and 36 of this Indictment are repeated and realleged as though fully set forth herein.

38.   On or about the dates set forth below, in the Southern District of New York and elsewhere, RENGAN RAJARATNAM, the defendant, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under

which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit: RENGAN RAJARATNAM caused the purchase of Clearwire common stock on the basis of the Intel Inside Information, as follows:

| COUNT | APPROX. DATE | SECURITY | TRANSACTION (AMOUNT APPROXIMATE) |
|-------|--------------|----------|----------------------------------|
| TWO | March 24, 2008 | Clearwire common stock (CLWR) | Purchase of 30,000 shares in the Fidelity Brokerage Account |
| THREE | March 24, 2008 | Clearwire common stock (CLWR) | Purchase of 45,000 shares in the Galleon Crossover Fund |
| FOUR | March 24, 2008 | Clearwire common stock (CLWR) | Purchase of 125,800 shares in the Galleon Tech Funds |
| FIVE | March 25, 2008 | Clearwire common stock (CLWR) | Purchase of 25,000 shares in the Fidelity Brokerage Account |
| SIX | March 25, 2008 | Clearwire common stock (CLWR) | Purchase of 50,000 shares in the Galleon Crossover Fund |
| SEVEN | March 25, 2008 | Clearwire common stock (CLWR) | Purchase of 136,000 shares in the Galleon Tech Funds |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5 and
240.10b5-2, and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

39.    As a result of committing one or more of the foregoing conspiracy and securities fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Section 371; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, as alleged in Counts One through Seven of this Indictment, RENGAN RAJARATNAM, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the above offenses.

## Substitute Assets Provision

40.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (i)      cannot be located upon the exercise of due diligence;

    (ii)     has been transferred or sold to, or deposited with, a third party;

    (iii)    has been placed beyond the jurisdiction of the court;

    (iv)    has been substantially diminished in value; or

    (v)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of said defendant up to the value of the

forfeitable property described above.

> (Title 15, United States Code, Sections 78j(b), 78ff;
> Title 18, United States Code, Sections 371 and 981;
> Title 21, United States Code, Section 853(p);
> Title 28, United States Code, Section 2461;
> and Title 17, Code of Federal Regulations,
> Sections 240.10b-5 and 240.10b5-2.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

21

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

RAJARENGAN RAJARATNAM,
a/k/a "Rengan Rajaratnam,"

Defendant.

## INDICTMENT

(18 U.S.C. §§ 2, 371; Title 15, United
States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations,
Sections 240.10b-5 and 240.10b5-2)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

_Kathleen Incich_
Foreperson.