UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

           – v. –                    :                    13 Cr. 211 (NRB)

RAJARENGAN RAJARATNAM,                    :
     a/k/a "Rengan Rajaratnam,"
                                         :

                     Defendant.

                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT RAJARENGAN RAJARATNAM'S MOTION TO DISMISS THE INDICTMENT AND TO SUPPRESS THE WIRETAP EVIDENCE

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
    of America.


Christopher D. Frey
David I. Miller
Assistant United States Attorneys
     – Of Counsel –

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    Insider Trading in Clearwire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Insider Trading in AMD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

    I.     THE INDICTMENT'S ALLEGATIONS OF INSIDER TRADING ARE
            SUFFICIENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          A.    The Indictment's Allegations Are More Than Sufficient Under
                Rule 7(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          B.    Tippee Liability Does Not Require Knowledge of a Personal
                Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.    COUNT ONE PROPERLY ALLEGES A SINGLE CONSPIRACY . . . . . . . . 12

          A.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          B.    Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    III.   THE ALLEGATONS OF COUNTS FOUR AND SEVEN ARE NOT
            FATALLY INCONSISTENT AND THOSE COUNTS SHOULD
            STAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          A.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          B.    Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    IV.   CONTROLLING LEGAL AUTHORITY REQUIRES THAT THE
            DEFENDANT'S MOTION TO SUPPRESS THE WIRETAP EVIDENCE
            BE SUMMARILY DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Costello* v. *United States*, 350 U.S. 359 (1956) .................................................................. 5

*Dirks* v. *SEC*, 463 U.S. 646 (1983)................................................................................... 9, 10

*Hamling* v. *United States*, 418 U.S. 87 (1974) ................................................................. 5

*In re Investors Management Co.*, 44 S.E.C. 633 (1971)................................................... 10

*Richardson* v. *Marsh*, 481 U.S. 200 (1987)...................................................................... 19

*SEC* v. *Obus*, 693 F.3d 276 (2d Cir. 2012)....................................................................... 10

*United States* v. *Al Kassar*, 582 F. Supp. 2d 488 (S.D.N.Y. 2008),
    *aff'd* 660 F.3d 108 (2d Cir. 2011) .......................................................................... 5, 6

*United States* v. *Alessi*, 638 F.2d 466 (2d Cir. 1980)...................................................... 14

*United States* v. *Aracri*, 968 F.2d 1512 (2d Cir. 1992)............................................... 13, 14

*United States* v. *Bout*, 731 F.3d 233 (2d Cir. 2013)....................................................... 6, 8

*United States* v. *Cantrell*, 612 F.2d 509 (10th Cir. 1980).............................................. 20

*United States* v. *Conde*, 309 F. Supp. 2d 510 (S.D.N.Y. 2003)..................................... 20

*United States* v. *Eason*, 434 F. Supp. 1217 (W.D. La. 1977)........................................ 20

*United States* v. *Falcone*, 257 F.3d 226 (2d Cir. 2001) ................................................. 11

*United States* v. *Ferrarini*, 9 F. Supp. 2d 284 (S.D.N.Y. 1998)..................................... 6

*United States* v. *Gabriel*, 920 F. Supp. 498 (S.D.N.Y. 1996)..................................... 15, 16

*United States* v. *Grossman*, 843 F.2d 78 (2d Cir. 1988)................................................ 6

*United States* v. *Guy*, 903 F.2d 1240 (9th Cir. 1990) .................................................... 12

*United States* v. *Jiau*, – F.3d –, 2013 WL 5735348 (2d Cir. Oct. 23, 2013) ................................ 11

*United States* v. *Kozeny*, 493 F. Supp. 2d 693 (S.D.N.Y. 2007) ................................... 8

*United States* v. *LaSpina*, 299 F.3d 165 (2d Cir. 2002) ................................... 5

*United States* v. *Libera*, 989 F.2d 596 (2d Cir. 1993) ................................... 11

*United States* v. *Marcus Schloss & Co., Inc.*, 710 F. Supp. 944 (S.D.N.Y. 1989) ...................... 17

*United States* v. *McGough*, 510 F.2d 598 (5th Cir. 1975) ................................... 8

*United States* v. *Moloney*, 287 F.3d 236 (2d Cir. 2002) ................................... 13

*United States* v. *Murray*, 618 F.2d 892 (2d Cir. 1980) ................................... 13, 14, 17

*United States* v. *Muscarella*, 03 Cr. 229 (NRB), 2004 WL 2186561
    (S.D.N.Y. Sept. 28, 2004) ................................... 5

*United States* v. *Mylett*, 97 F.3d 663 (2d Cir. 1996) ................................... 11

*United States* v. *Nachamie*, 101 F. Supp. 2d 134 (S.D.N.Y. 2000) ................................ 15

*United States* v. *Ohle*, 678 F. Supp. 2d 215 (S.D.N.Y. 2010) ................................... 13, 14, 15, 16

*United States* v. *Olmeda*, 461 F.3d 271 (2d Cir. 2006) ................................... 13

*United States* v. *Raj Rajaratnam*, 719 F.3d 139 (2d Cir. 2013) ................................... 24

*United States* v. *Raj Rajaratnam*, 802 F. Supp. 2d 491 (S.D.N.Y. Aug. 11, 2011) ...................... 7

*United States* v. *Rittweger*, 259 F. Supp. 2d 275 (S.D.N.Y. 2003) ................................ 6

*United States* v. *Rooney*, 866 F.2d 28 (2d Cir. 1989) ................................... 14

*United States* v. *Silverman*, 430 F.2d 106 (2d Cir. 1970) ................................... 5, 8

*United States* v. *Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) ................................... 5, 8

*United States* v. *Sturdivant*, 244 F.3d 71 (2d Cir. 2001) .................................................. 13, 17, 18

*United States* v. *Szur*, 97 Cr. 108 (JGK), 1998 WL 132942 (S.D.N.Y. Mar. 20, 1998)............... 17

*United States* v. *Tutino*, 883 F.2d 1125 (2d Cir. 1989)......................................................... 13

*United States* v. *Vanwort*, 887 F.2d 375 (2d Cir. 1989) ......................................................... 14, 17

*United States* v. *Walsh*, 194 F.3d 37 (2d Cir. 1999) ....................................................... 5

*United States* v. *Watts*, 934 F. Supp. 2d 451 (E.D.N.Y. 2013)................................................... 12

*United States* v. *Whitten*, 610 F.3d 168 (2d Cir. 2010).................................................. 19

**<u>Federal Rules</u>**

Fed. R. Crim. P. 7(c) ................................................................................................... 5

## PRELIMINARY STATEMENT

The United States of America respectfully submits this memorandum of law in opposition to the February 7, 2014 motion by defendant Rajarengan Rajaratnam, a/k/a "Rengan Rajaratnam" (hereinafter, "Rengan Rajaratnam" or the "Defendant"), to dismiss the Indictment in this matter and for certain other relief.  The Defendant first moves to dismiss the Indictment on the purported basis that it is deficient because it does not allege that Rengan Rajaratnam knew that the tipping conspirators had received personal benefits in return for their disclosure of material, nonpublic information, in violation of those insiders' fiduciary and other duties of confidentiality.  Next, Rengan Rajaratnam moves to dismiss Count One on the ground that it is duplicitous, and to dismiss Counts Four and Seven as allegedly fatally inconsistent with Count One and internally inconsistent within themselves.  Finally, the Defendant seeks to suppress the Government's wiretap evidence.  For the reasons that follow, the Defendant's motion should be denied in its entirety.

## STATEMENT OF FACTS

Indictment 13 Cr. 211 (NRB) (the "Indictment") was returned on March 20, 2013 in seven counts.  Count One charges Rengan Rajaratnam with conspiracy to commit securities fraud in or about 2008, in violation of Title 18, United States Code, Section 371.  Counts Two through Seven charge substantive securities fraud violations, pursuant to Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2.  The charges in the Indictment stem from an insider trading scheme in which Rengan Rajaratnam, Raj Rajaratnam, and others obtained material, nonpublic information belonging to certain publicly-traded companies for the purpose of executing profitable securities transactions.

1

More specifically, the Indictment alleges that Rengan Rajaratnam, who was employed at the now-defunct Galleon Group hedge fund as a former portfolio manager for the Galleon Crossover Fund and the Galleon Buccaneer Fund, received material, nonpublic information from his brother, Raj Rajaratnam, and thereafter, based on that information, executed securities transactions relating to the common stock of two companies – Clearwire Corporation ("Clearwire") and Advanced Micro Devices, Inc. ("AMD") – both in his personal brokerage account at Fidelity Investments and in certain of the Galleon Group's funds.  (Ind. ¶¶ 1-8).

Insider Trading in Clearwire

As set forth in the Indictment, in or about March 2008, Rajiv Goel, who worked at Intel Corporation ("Intel"), obtained certain material, nonpublic information concerning Intel's plans to make a $1 billion strategic investment in Clearwire, a publicly-traded provider of wireless high-speed Internet service, in exchange for an equity ownership position in Clearwire.  (Ind. ¶¶ 9-10).  Thereafter, Goel disclosed this inside information to Raj Rajaratnam for the purpose of enabling Raj Rajaratnam to execute securities transactions and earn profits.  (*Id.* ¶ 11).  When Goel made the disclosure, all of the information he provided was non-public, and Goel did so in violation of the fiduciary and other duties of trust and confidence that he owed to Intel.  (*Id.*).  After receiving this information from Goel, Raj Rajaratnam not only personally caused securities transactions in certain Galleon Group funds to be executed, but also further disclosed the Intel inside information to his brother, Rengan, so that Rengan Rajaratnam could also use it to execute securities transactions and earn profits.  (*Id.* ¶¶ 12).  The Defendant did exactly that.  Between in or about March 2008 and in or about April 2008, the Defendant used the material, nonpublic information regarding Intel to trade profitably in Clearwire common stock in both his personal brokerage account and on behalf of certain of the Galleon Group's funds.  (*Id.* ¶¶ 13-21).  More

specifically, the Defendant reaped a total profit of at least approximately $101,070 in his personal brokerage account at Fidelity Investments, while causing the Galleon Crossover Fund to profit in the total amount of at least approximately $231,539.  (*Id.* ¶¶ 19-20).

<u>Insider Trading in AMD</u>

As set forth in the Indictment, in or about 2008, Anil Kumar, a partner at McKinsey & Company, Inc. ("McKinsey"), obtained certain material, nonpublic information concerning a significant transaction wherein AMD, McKinsey's client, planned to spin off its manufacturing or "fab" business into a new entity, and two investment companies wholly owned by the Abu Dhabi Government would invest up to six to eight billion dollars in that new entity and also separately invest cash in AMD.   (Ind. ¶¶ 22-23).  Thereafter, in or about August 2008, Kumar disclosed this inside information to Raj Rajaratnam for the purpose of enabling Raj Rajaratnam to execute securities transactions, which Raj Rajaratnam subsequently did.  (*Id.* ¶¶ 23-24).  When Kumar made the disclosure, all of the information he provided was non-public, and Kumar did so in violation of the fiduciary and other duties of trust and confidence that he owed to McKinsey and AMD.  (*Id.* ¶ 22).  After receiving this information from Kumar, Raj Rajaratnam further disclosed the AMD inside information to his brother, Rengan Rajaratnam, in or about August 2008, which enabled the Defendant to have securities transactions executed in certain of the Galleon Group funds he managed.  (*Id.* ¶¶ 25).   Ultimately, as a result of the overall market decline during the second half of 2008, the Galleon Group funds in which trades in AMD had been made did not realize profits from those trades; indeed, those funds sold the AMD shares that were purchased based on the inside information for a loss.  (*Id.* ¶ 32).

In addition, from at least in or about August 2008, Rengan Rajaratnam personally took steps to cultivate a second source of inside information at McKinsey besides Anil Kumar.

Specifically, the Defendant sought to corrupt a new McKinsey partner who had attended Stanford Business School with him and who was Kumar's protégé at McKinsey.  The Defendant reported back his affirmative efforts in this regard to Raj Rajaratnam, and the two men agreed that the Defendant should try to "have access" to this McKinsey partner to "be able to chat with him" about other inside information.  (Ind. ¶¶ 26-30).  Specifically, in or about the middle of August 2008, Rengan Rajaratnam reported to his brother, Raj, that he had just finished a meeting with this McKinsey partner in which the partner had "spilled his beans" and "volunteered" certain information.  In addition, Rengan Rajaratnam made clear to his brother that the McKinsey partner was "thinking about playing ball," and that the Defendant had offered to provide the partner with a certain benefit in exchange.  (*Id.* ¶ 26).

## ARGUMENT

## I.   THE INDICTMENT'S ALLEGATIONS OF INSIDER TRADING ARE SUFFICIENT

The Defendant asks this Court to dismiss the Indictment on the purported ground that it fails to allege an essential element of the insider trading crimes with which he has been charged, namely, that he knew that the tippers (Goel and Kumar) had received any personal benefit in return for disclosing material, nonpublic information, in violation of their fiduciary and other duties of confidentiality.  As discussed more fully below, the Defendant is wrong for two independent reasons.  First, the Indictment's allegations are more than sufficient under Rule 7(c) of the Federal Rules of Criminal Procedure.  Second, the law of insider trading does not require a showing that the tippee has knowledge of personal benefit to the tipper.  For these reasons, the Defendant's argument in support of dismissal should be rejected.

**A.      The Indictment's Allegations Are More Than Sufficient Under Rule 7(c)**

Rule 7(c) of the Federal Rules of Criminal Procedure requires only that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c).  To be legally sufficient, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States* v. *Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (citations omitted); *see also United States* v. *Al Kassar*, 582 F. Supp. 2d 488, 496 (S.D.N.Y. 2008), *aff'd* 660 F.3d 108 (2d Cir. 2011); *United States* v. *Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citations omitted).  "In short, 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States* v. *LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (quoting *Hamling* v. *United States*, 418 U.S. 87, 117 (1974)); *see also United States* v. *Muscarella*, 03 Cr. 229 (NRB), 2004 WL 2186561, at *2 (S.D.N.Y. Sept. 28, 2004) ("So long as the indictment sets forth the elements of the offense in sufficient detail to provide the defendant with notice of the charges against him and does not present double jeopardy problems, it is impervious to attack on a motion to dismiss.") (citation omitted).

An indictment also "must be read to include facts which are necessarily implied by the specific allegations made." *Stavroulakis*, 952 F.2d at 693 (quoting *United States* v. *Silverman*, 430 F.2d 106, 111 (2d Cir. 1970)).  Thus, a facially-valid indictment "is enough to call for trial of the charge on the merits." *Costello* v. *United States*, 350 U.S. 359, 363 (1956).

The case law in the securities fraud context (as in others) makes clear that the Government need not identify in an indictment the specific facts to support the elements of its

charges and need do little more than track the statutory language. *See, e.g.*, *United States* v. *Grossman*, 843 F.2d 78, 84 (2d Cir. 1988) (securities fraud indictment "need do little more than to track the language of the statute charged and state the time and place . . . of the alleged crime"); *United States* v. *Rittweger*, 259 F. Supp. 2d 275, 287-88 (S.D.N.Y. 2003) (Koeltl, J.) (denying motion to dismiss indictment charging securities fraud, wire fraud and violations of the Travel Act, stating that the charges "satisfy the well-established pleading requirements in this Circuit – they are pleaded in the language of the statutes and provide sufficient particulars to provide notice to the defendants and to permit the defendants to plead double jeopardy"); *United States* v. *Ferrarini*, 9 F. Supp. 2d 284, 296 (S.D.N.Y. 1998) (Cote, J.) (denying motion to dismiss securities fraud indictment because the allegations "conspicuously track[ed] the language of [the statute] and g[a]ve[] notice of the time and place of the alleged crime").

Here, the Indictment's allegations easily satisfy and exceed the relevant pleading standard. Not only does the Indictment track the language of the relevant statutes, (Ind. ¶¶ 33-34, 38), but it also provides a copious amount of additional factual detail, fairly informing the Defendant of the charges against which he must defend. (*Id.* ¶¶ 1-32, 35-36). Under Rule 7(c), nothing more is required. *See, e.g.*, *United States* v. *Bout*, 731 F.3d 233, 240-41 (2d Cir. 2013) ("Indeed, 'in an indictment for conspiring to commit an offense – in which the conspiracy is the gist of the crime – it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy.") (internal citation omitted); *Al Kassar*, 582 F. Supp. 2d at 496. The Indictment is thus facially valid, and sufficient to warrant a trial on the merits.

Nevertheless, the Defendant contends that the Indictment is fatally deficient because it fails to allege that he had the requisite knowledge to violate the insider trading laws. More

6

specifically, he argues the Indictment is devoid of allegations that he knew the tippers had disclosed inside information for a personal benefit.  While not expressly stating the word "benefit" itself, the Indictment sufficiently alleges the Defendant's knowledge that the tippers were disclosing inside information for personal gain.  The Defendant's knowledge of what was required to obtain material, nonpublic information from Goel and Kumar is reflected by, among other things, his affirmative efforts in the summer of 2008 to personally cultivate another source of inside information.  (*Id.* ¶¶ 26-30).  As set forth in the Indictment, Raj Rajaratnam and the Defendant discussed the fact that the Defendant should try to "have access" to a partner at McKinsey, who had been the Defendant's colleague at Stanford Business School.  In fact, Rengan Rajaratnam relayed to his brother, Raj, that when he had asked that partner what other stocks the partner liked, the partner said, "'You know, the problem is all my best ideas . . . are inside information,'" a statement to which Rengan Rajaratnam had replied, "'[Y]ou know, that's not a problem I'm sure *we can hire [your wife] as a . . . consultant for Galleon*.'"  And as the Defendant indicated, in summarizing this situation for his brother, the partner was "definitely, you know, thinking about playing ball."  (*Id.* ¶ 26) (emphasis added).

It is a fair inference from these allegations that Rengan Rajaratnam knew full well that the way to corrupt those with inside information was to provide a personal benefit of some kind, including concealed payments.  This is particularly so in light of the fact that, much like the arrangement the Defendant was proposing to the source he sought to cultivate, Raj Rajaratnam was wiring payments disguised as compensation for "consulting services" to Anil Kumar's offshore accounts in exchange for the tips Kumar provided.  *See United States* v. *Raj Rajaratnam*, 802 F. Supp. 2d 491, 508-09 (S.D.N.Y. Aug. 11, 2011).  Because the case law is clear that the allegations of an indictment "must be read to include facts which are necessarily

implied by the specific allegations made," *Stavroulakis*, 952 F.2d at 693, the Indictment is wholly sufficient in this regard, even assuming *arguendo* that a tippee must know of the benefit conveyed to the tipper.

In light of these allegations, the notion that the Indictment – which otherwise fully complies with the commands of Rule 7(c) – should be dismissed for failure to explicitly state the word "benefit" should be rejected. *See United States* v. *Bout*, 731 F.3d 233, 240-41 (2d Cir. 2013) (affirming district court's denial of motion to dismiss where count charging conspiracy to commit murder used the word "kill" and not any other term describing the object crime of the charged conspiracy as murder); *United States* v. *McGough*, 510 F.2d 598, 602-03 (5th Cir. 1975) (reversing district court's dismissal of indictment charging false statements for failure to use the word "material"; "If the facts alleged in the indictment warrant an inference that the false statement is material, the indictment is not fatally insufficient for its failure to allege materiality in haec verba"); *United States* v. *Silverman*, 430 F.2d 106, 111 (2d Cir. 1970) ("An indictment must be read to include facts which are necessarily implied by the specific allegations made"); *United States* v. *Kozeny*, 493 F. Supp. 2d 693, 712-13 (S.D.N.Y. 2007) ("Defendants cannot seriously contend that their defense will be prejudiced or that they are not sufficiently informed of the charges against them for purposes of asserting a double jeopardy defense merely because the Indictment does not use the magic word 'willfully' in certain paragraphs. . . . At trial, the jury will be instructed on the issue of willfulness and defendants will not be convicted . . . without a finding of willfulness.  The absence of that word from the charging portion of the Indictment does not merit dismissal of those offenses.").

**B.     Tippee Liability Does Not Require Knowledge of a Personal Benefit**

The Defendant's motion to dismiss the Indictment should be rejected for a second, independent reason.  Contrary to the central premise of his argument, neither the Supreme Court nor any Court of Appeals has ever required the Government to allege (or to subsequently prove) that a tippee defendant knew not only that a tipper has disclosed material, nonpublic information in breach of a duty, but also that the tipper has done so for a personal benefit.

The Supreme Court addressed tippee liability in insider trading cases – and established the requirement that an insider-tipper is guilty of insider trading only if he disclosed confidential information to an outsider for a personal benefit – in *Dirks* v. *SEC*, 463 U.S. 646 (1983).  Dirks was a first-level tippee who received information from an insider suggesting that management was committing fraud.  *Dirks* v. *SEC*, 463 U.S. at 649.  The tipper had notified various regulatory agencies of the fraud, but they failed to act; accordingly, he urged Dirks to verify the fraud and disclose it publicly.  *Id.*  Dirks conducted an investigation, and unsuccessfully sought to persuade a newspaper to publish the allegations.  *Id.*   Although Dirks did not trade in the company's stock, he discussed his findings with clients and investors, some of whom did so.  *Id.*

In finding that Dirks was not liable for insider trading, the Supreme Court held that tippees assume an insider's duty to the company's shareholders to disclose or abstain from trading in the company's stock if the inside information "has been made available to them *improperly*."  *Id.* at 660 (emphasis in original).  In discussing the "improper" receipt of inside information, the Supreme Court did not adopt the position advocated by the Defendant, namely, that a tippee must know the tipper benefitted from the tip.  Instead, the Supreme Court required only that the tippee know the tipper disclosed information in breach of a duty.  *Id.* at 660.  As the Supreme Court stated:

> [A] tippee assumes a fiduciary duty to the shareholders of a
> corporation not to trade on material nonpublic information only
> when the insider has breached his or her fiduciary duty to the
> shareholders by disclosing the information to the tippee and the
> tippee knows or should know that there has been a breach.

*Id.*; *see also id.* at 661 n.19 (citing concurring opinion in *In re Investors Management Co.*, 44

S.E.C. 633, 650 (1971), that a tippee can be held liable only if he received information in breach

of an insider's duty not to disclose it).

Likewise, the Second Circuit has never required the Government to prove that a

successive tippee knew the original tipper who disclosed confidential information acted for a

personal benefit, and the Government is aware of no decision from any other Court of Appeals

imposing such a requirement. To the contrary, in *SEC* v. *Obus*, 693 F.3d 276 (2d Cir. 2012), the

Second Circuit did not require the SEC to prove that the tippees knew the tipper had disclosed

inside information for a personal benefit. In *Obus*, the Second Circuit considered whether the

SEC had presented sufficient evidence to avoid summary judgment for the defendants (a tipper,

an immediate tippee, and a successive tippee). In finding that it had done so, and in rejecting the

defendants' argument regarding the level of knowledge required on the tippee's part as to the

tipper's breach, the Second Circuit summarized the elements as follows:

> [We] hold that tipper liability requires that (1) the tipper had a duty
> to keep material non-public information confidential; (2) the tipper
> breached that duty by intentionally or recklessly relaying the
> information to a tippee who could use the information in
> connection with securities trading; and (3) the tipper received a
> personal benefit from the tip. Tippee liability requires that (1) the
> tipper breached a duty by tipping confidential information; (2) the
> tippee knew or had reason to know that the tippee improperly
> obtained the information (*i.e.*, that the information was obtained
> through the tipper's breach); and (3) the tippee, while in knowing
> possession of the material non-public information, used the
> information by trading or by tipping for his own benefit.

*Obus*, 693 F.3d at 289.

Most recently, in *United States* v. *Jiau*, – F.3d –, 2013 WL 5735348 (2d Cir. Oct. 23, 2013), the Second Circuit stated that, to hold a tippee criminally liable for insider trading, the Government must prove the following elements:

> (1) the insider-tippers . . . were entrusted the duty to protect confidential information, which (2) they breached by disclosing to their tippee[ ], who (3) knew of their duty and (4) still used the information to trade a security or further tip the information for her benefit, and finally (5) the insider-tippers benefited in some way from their disclosure.

*Id.* at *3.  Indeed, *Jiau* is merely the most recent in a string of cases in which the Second Circuit has found that a tippee, in order to be criminally liable for insider trading, need know only that an insider-tipper disclosed information in breach of a duty of confidentiality.  *See United States* v. *Libera*, 989 F.2d 596, 600 (2d Cir. 1993) (holding that requirements for tippee liability are "(i) a breach by the tipper of a duty owed to the owner of the nonpublic information; and (ii) the tippee's knowledge that the tipper had breached the duty"); *United States* v. *Mylett*, 97 F.3d 663, 668 (2d Cir. 1996) (explaining that tippee defendants must "subjectively believe that the [inside] information was obtained in breach of a fiduciary duty"); *United States* v. *Falcone*, 257 F.3d 226, 234 (2d Cir. 2001) (same).  As for the benefit received by the tipper, however, the Second Circuit has held that the Government need prove only that there was such a benefit, but not that the tippee knew of it.

Finally, contrary to the Defendant's assertions, the Government's position as to the knowledge element for tippee liability is not in tension with that taken in either *United States* v. *Raj Rajaratnam*, 09 Cr. 1184 (RJH), or in *United States* v. *Martoma*, 12 Cr. 973 (PGG).  Unlike Rengan Rajaratnam, the defendants in those cases received information directly from the key tippers rather than through an intermediary.  In the case of Raj Rajaratnam, the defendant compensated Goel by executing favorable trades in Goel's brokerage account at Charles Schwab,

11

and Kumar, by wiring payments disguised as compensation for consulting services to Kumar's offshore accounts that were subsequently reinvested in the Galleon Group through the name of Kumar's housekeeper. In the case of Matthew Martoma, the defendant compensated the insider by arranging paid consultations with him through an expert-networking firm, and also cultivated a friendship with the insider. Given these facts, there was no serious dispute that Raj Rajaratnam or Matthew Martoma knew the insider-tipper had disclosed information for a benefit. Consequently, the Government consented in those cases to the district courts' proposed jury charge. But consenting to such a charge covering an essentially undisputed element is very different than conceding it was legally required.[1]

In sum, the Indictment properly alleges the requisite *mens rea* and is consistent with *Dirks* and Second Circuit precedent setting forth the elements of tippee liability. The Defendant's arguments to the contrary should be rejected.

For all of the foregoing reasons, there is no basis for dismissing the Indictment as a result of its purported failure to allege an essential element of the crimes charged.

## II.   COUNT ONE PROPERLY ALLEGES A SINGLE CONSPIRACY

Rengan Rajaratnam next claims that Count One of the Indictment must be dismissed because it is duplicitous. More specifically, the Defendant argues that Count One charges two separate conspiracies in a single count, and countenancing that purported deficiency would unfairly and significantly prejudice him. For the reasons set forth below, the Defendant is wrong as a matter of law, and his argument in this regard should be rejected.

---

[1] Moreover, while the Defendant appeals to the law-of-the-case doctrine, that doctrine is generally not applicable in a case involving different parties in different trials. *See, e.g., United States* v. *Watts*, 934 F. Supp. 2d 451, 464 (E.D.N.Y. 2013) (citing *United States* v. *Guy*, 903 F.2d 1240, 1242 (9th Cir. 1990) (noting that the law-of-the-case doctrine applies to the same case where the parties in the subsequent proceeding were also the parties to the former decision).

A.    **Applicable Law**

Duplicity is the joinder of two or more distinct crimes in a single count.  *United States* v. *Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992).  "Duplicitous pleading is not presumptively invalid; rather, it is impermissible only if it prejudices the defendant."  *United States* v. *Ohle*, 678 F. Supp. 2d 215, 221 (S.D.N.Y. 2010) (citing *United States* v. *Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006)); *see also United States* v. *Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) ("An indictment is impermissibly duplicitous where: (1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and (2) the defendant is prejudiced thereby."  (quoting *United States* v. *Murray*, 618 F.2d 892, 896 (2d Cir. 1980)).  Duplicitous counts pose three types of potential prejudice: (1) the potential lack of notice of the crime charged and its maximum penalty; (2) the possibility that a second trial on the same offense would not be barred by the Double Jeopardy Clause; and (3) the potential uncertainty with respect to the jury's verdict and the attendant sentencing implications of the verdict.  *See United States* v. *Sturdivant*, 244 F.3d at 77-78; *accord United States* v. *Olmeda*, 461 F.3d at 281.

However, duplicitous pleading is permissible when the charged crimes are alleged to have furthered a single scheme.  *See United States* v. *Olmeda*, 461 F.3d at 281.  Indeed, the Second Circuit has long held that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme."  *United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989); *see also United States* v. *Moloney*, 287 F.3d 236, 240 (2d Cir. 2002); *Sturdivant*, 244 F.3d at 77.  In other words, "[a]s long as the essence of the alleged crime is carrying out a single scheme to defraud, then aggregation is permissible."  *United States* v. *Tutino*, 883 F.2d at 1141.

"A conspiracy indictment presents 'unique issues' in the duplicity analysis because 'a single agreement may encompass multiple illegal objects.'" *Aracri*, 968 F.2d at 1518 (quoting *United States* v. *Murray*, 618 F.2d 892, 896 (2d Cir. 1980)). "In this Circuit it is well established that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime and that is one, however diverse its objects." *Id.* (internal citations omitted). "A single conspiracy may be found where there is mutual dependence among the participants, a common aim or purpose or a permissible inference from the nature and scope of the operation that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture." *United States* v. *Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989). "Each member of the conspiracy is not required to have conspired directly with every other member of the conspiracy; a member need only have 'participated in the alleged enterprise with a consciousness of its general nature and extent.'" *United States* v. *Ohle*, 678 F. Supp. 2d at 222 (citing *United States* v. *Rooney*, 866 F.2d 28, 32 (2d Cir. 1989)).

On a pretrial motion to dismiss a conspiracy charge as duplicitous, courts look at the face of the indictment to determine whether the challenged count alleges a single conspiracy. *Ohle*, 678 F. Supp. 2d at 222 ("If the Indictment on its fact sufficiently alleges a single conspiracy, the question of whether a single conspiracy or multiple conspiracies exist is a question of fact for the jury"); *see also Aracri*, 968 F.2d at 1519 ("Whether the government has proved a single conspiracy or has instead proved 'multiple other independent conspiracies in a question of fact for a properly instructed jury.'") (quoting *United States* v. *Alessi*, 638 F.2d 466, 472 (2d Cir. 1980)).

14

"Boilerplate allegations" of a single conspiracy "survive[] the facial test." *Ohle*, 678 F. Supp. 2d at 222-23. Where an indictment contains "boilerplate allegations" of a single conspiracy, pretrial dismissal on grounds of duplicity is not warranted even if the allegations in the indictment indicate that a single conspiracy count may consist of multiple conspiracies. *Id.* (denying motion to dismiss where indictment's description of overt acts "indicates that [the challenged count] may consist of multiple conspiracies"); *United States* v. *Gabriel*, 920 F. Supp. 498, 504-05 (S.D.N.Y. 1996) (denying motion to dismiss where indictment contained "boilerplate allegations" of single conspiracy, notwithstanding that "on any but a superficial reading, [the challenged count] appears to allege two distinct conspiracies . . . .").

"[C]ourts in the Second Circuit have repeatedly denied motions to dismiss a count as duplicitous." *Ohle*, 678 F. Supp. 2d at 222 (citing *United States* v. *Nachamie*, 101 F. Supp. 2d 134, 153 (S.D.N.Y. 2000) (collecting cases)); *Gabriel*, 920 F. Supp. at 504 (Second Circuit has "repeatedly cautioned that the determination of whether a conspiracy is single or multiple is an issue of fact singularly well suited to determination by a jury."). This is in part because whether a single conspiracy or multiple conspiracies exist is a question for the jury, but also in part because a duplicitous charge is improper only if it is prejudicial, and "much of the risk of prejudice created by a potentially duplicative charge can be cured through proper instructions at trial." *Ohle*, 678 F. Supp. 2d at 223-24 n.7.

**B.     Discussion**

Rengan Rajaratnam's motion must be denied because the Indictment alleges a single conspiracy, and whether ultimately the evidence supports a finding of a single conspiracy (or, in fact, multiple conspiracies) is a question of fact for the jury.

With respect to the charged conspiracy, the Indictment alleges that "[i]n or about 2008, in the Southern District of New York and elsewhere, RENGAN RAJARATNAM, the defendant, Raj Rajaratnam, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, securities fraud . . . ." (Ind. ¶ 33). In *Ohle*, the defendant moved to dismiss a conspiracy count that contained almost identical operative language. *Ohle*, 678 F. Supp. 2d at 222-23 (quoting Count Five of the indictment). There, the district court described this language as "boilerplate allegations" of a single conspiracy, and denied the defendants' pretrial motion to dismiss the count as duplicitous, notwithstanding that the alleged overt acts indicated that the count "may consist of multiple conspiracies." *Ohle*, 678 F. Supp. 2d at 223. As in *Ohle*, the Indictment here alleges on its face a single conspiracy, and thus "survives the facial test." *See also Gabriel*, 920 F. Supp. at 504-05 ("Given Count Six's boilerplate allegations of a single conspiracy, the Court cannot conclude on the basis of the pleadings alone that there is *no* set of facts falling within the scope of Count Six that could warrant a reasonable jury in finding a single conspiracy," notwithstanding that Count Six "appears to actually allege two distinct conspiracies.").

Moreover, it is evident from the Indictment that the jury would find a single conspiracy here. The Government submits that the evidence at trial will establish the existence of a single conspiracy in which Raj Rajaratnam, the Defendant, certain employees of the Galleon Group, and others endeavored to engage in insider trading in various stocks based on material, nonpublic information obtained from various insiders. "A single conspiracy may be found where there is . . . a permissible inference, from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important

16

to the success of the venture." *United States* v. *Vanwort*, 887 F.2d at 383 (internal quotations and citations omitted). *See also United States* v. *Marcus Schloss & Co., Inc.*, 710 F. Supp. 944, 954-55 (S.D.N.Y. 1989) (single conspiracy would be found where tippees "knew their own activities were part of a larger insider trading enterprise beginning with [tipper], but did not know or conspire directly with each other").

The Defendant claims that Count One threatens prejudice, but his claims in this regard are wholly unavailing. First, the Defendant asserts that the alleged duplicity creates the risk of juror confusion and a non-unanimous verdict. However, "[i]t is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict." *United States* v. *Murray*, 618 F.2d 892, 898 (2d Cir. 1980). Indeed, in *Sturdivant*, the Second Circuit noted that any prejudice to the defendant "can be avoided" by "a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction." *United States* v. *Sturdivant*, 244 F.3d at 75, 79. *See also United States* v. *Szur*, 97 Cr. 108 (JGK), 1998 WL 132942, at *11 (S.D.N.Y. Mar. 20, 1998) (defendant "may properly request a multiple conspiracies jury instruction depending upon the evidence presented at trial.").

Second, the Defendant's complaint that Count One's purported duplicity has deprived him of adequate notice of the nature of the charge is meritless. The Indictment in this matter details at some length, among other things, the alleged scheme, the defendant's role and participation in that scheme, the specific transactions at issue, and the relevant time periods. In addition, the Government already has provided an initial Bill of Particulars setting forth additional details known to the Government, including the identity of co-conspirators; specific periods of time during which the Government contends the Defendant received material,

nonpublic information; and details relating to the Galleon Group funds in which trades in the two stocks at issue were made in furtherance of the charged conspiracy. The specificity in the Indictment and Bill of Particulars more than amply provides the Defendant with a detailed roadmap of the Government's case.

Third, the Defendant's complaint that the alleged duplicity creates a significant risk of violating the Double Jeopardy Clause, and would create confusion at any sentencing, is unfounded. For Double Jeopardy purposes, to the extent the jury's verdict on Count One were deemed to be a general verdict, the Second Circuit has held that the government would be "estopped from acting on any interpretation of the jury's verdict that would prejudice defendant's double jeopardy rights." *Sturdivant*, 244 F.3d at 78. "Principles of equity prohibit the government from benefitting from the prejudicial ambiguity that the government alone was responsible for creating." *Id*. at 77. With respect to sentencing, neither a trade nor a profit is an element of the charged conspiracy, so even if the jury were to convict the Defendant as to Count One, it need not necessarily agree that any specific trade occurred, or that any specific profit was realized, in furtherance of the conspiracy. Moreover, even assuming there were any uncertainty as to whether the jury had acquitted Rengan Rajaratnam with respect to certain insider trading activity identified by the Government in connection with Count One, the Government would nevertheless be entitled to introduce evidence of some, all, or more insider trading in certain securities as relevant conduct for purposes of sentencing. *See id.* at 80 ("The district court is otherwise free to make any determinations, adjustments or departures that are permissible under the Guidelines, including whether the conduct for which defendant will be deemed to have been acquitted nevertheless constitutes relevant conduct for sentencing purposes under the Guidelines.").

Fourth, and finally, the Defendant argues that the alleged duplicity increases the risk of prejudicial rulings at trial on the admissibility of evidence.  The Defendant has failed to explain how he would be prejudiced by the admission of evidence involving the different conspiracies he claims the Indictment charges, since he is clearly alleged to have been involved in both. Moreover, to the extent certain evidence would only be admissible for certain purposes, the Court can address that concern at trial with appropriate limiting instructions.  And the law presumes the jury follows a judge's instructions.  *See Richardson* v. *Marsh*, 481 U.S. 200, 206 (1987); *see also United States* v. *Whitten*, 610 F.3d 168 (2d Cir. 2010).  The Defendant cites no authority for the proposition that such concerns are a basis for dismissing, prior to trial, a count that on its face alleges a single conspiracy.

Accordingly, Rengan Rajaratnam's motion to dismiss Count One as duplicitous should be denied.

## III.   THE ALLEGATIONS OF COUNTS FOUR AND SEVEN ARE NOT FATALLY INCONSISTENT AND THOSE COUNTS SHOULD STAND

Finally, Rengan Rajaratnam argues that the Indictment's allegations in Counts Four and Seven are legally invalid because they are predicated on a theory that is "repugnant" to the conspiracy charge against him.  More specifically, the Defendant argues that while Count One of the Indictment indicates that "*Raj Rajaratnam* caused the Galleon Tech Funds to buy at least approximately 261,800 shares of Clearwire" from on or about March 24, 2008 through on or about March 25, 2008, Counts Four and Seven indicate that "*Rengan Rajaratnam* caused the purchase" of those shares on or about those dates in those same funds.  (See Ind. ¶¶ 15, 38) (emphasis added).  According to the Defendant, the allegations of the conspiracy charged in Count One are logically inconsistent with those concerning the substantive crimes alleged in

Counts Four and Seven and, thus, the substantive charges must be dismissed.  As discussed more fully below, however, Counts Four and Seven are in no way defective.

### A.      Applicable Law

An indictment is defective if it contains logically inconsistent counts.  *See United States* v. *Cantrell*, 612 F.2d 509, 511 (10th Cir. 1980) (reversing verdict on the ground that indictment charging both transport of stolen goods to Kansas and receipt of stolen goods in Kansas was inconsistent and unfairly hampered defendants' ability to prepare for trial; requiring the Government to elect to pursue one of the two charges).  Significantly, however, charges are fatally inconsistent only when the "[d]efendant is placed in the untenable position of either offering no evidence or seeing his defense to one count prove the Government's case on another."  *United States* v. *Eason*, 434 F. Supp. 1217, 1221 (W.D. La. 1977) (requiring the Government to pursue only one of three counts charged); *see also United States* v. *Conde*, 309 F. Supp. 2d 510, 511 (S.D.N.Y. 2003) (finding charges incompatible because "the two allegations [in the indictment were] mutually exclusive; if defendant meant to provide the CI with a fraudulent license, he was not converting the payment, and vice versa.").

### B.      Discussion

Paragraph 15 of the Indictment alleges that "[f]rom on or about March 24, 2008, though and including on or about March 25, 2008, Raj Rajaratnam caused the Galleon Tech Funds to buy at least approximately 261,800 shares of Clearwire based, in whole or in part, on the Intel Inside Information." (Ind. ¶ 15).  Meanwhile, Counts Four and Seven allege that on or about March 24, 2008 and March 25, 2008, respectively, "Rengan Rajaratnam *caused* the purchase" of those same Clearwire shares in "the Galleon Tech Funds." (Ind. ¶ 38) (emphasis added).  The Defendant's argument is thus that it follows from these allegations that "Counts One, Four and

20

Seven cannot mean that *both* Raj and Rengan caused the March 24 and 25, 2008 [Clearwire]

trades in the Galleon Tech Funds," and consequently Counts Four and Seven must be dismissed

as fatally inconsistent.  (Mot. at 19).  The Defendant is wrong.

      The confusion here appears to arise from the following language in paragraph 8 of the

Government's Bill of Particulars:

> With respect to Counts Three, Four, Six and Seven of the
> Indictment, based in whole or in part on material, non-public
> information that Rajiv Goel disclosed to Raj Rajaratnam (and
> which Raj Rajaratnam subsequently disclosed to Rengan
> Rajaratnam) in violation of Goel's fiduciary and other duties of
> confidentiality, *Rengan Rajaratnam caused and/or aided and
> abetted the purchase of Clearwire common stock by directing
> certain Galleon Group traders, including but not limited to [trader
> name], to execute those trades in the portfolio manager codes of
> CRS and TMT.*

(Gitner Decl., Ex. N at 4) (emphasis added).  The Defendant therefore construes Counts Four and

Seven to mean that the Government has alleged that he caused the March 24 and 25, 2008

Clearwire trades in the Galleon Tech Funds by directing certain Galleon Group traders to execute

those trades.  The Defendant's confusion is understandable in light of the imprecise language of

the Bill of Particulars, which admittedly in no way distinguishes what is meant by the "causing"

of the Clearwire stock purchases in Counts Three and Five (in the Galleon Crossover Fund) from

that in Counts Four and Seven (in the Galleon Tech Funds).[2]

      Counts Four and Seven charge Rengan Rajaratnam under an aiding and abetting theory of

liability, pursuant to Title 18, United States Code, Section 2.  More specifically, the Government

contends that while Raj Rajaratnam was principally responsible for directly causing the Galleon

---

[2] Although the discussion set forth herein should clarify for the Defendant what is alleged in
Counts Four and Seven, the Government stands ready to amend its Bill of Particulars prior to
trial in this regard, as it reserved the right to do.  (*See* Gitner Decl., Ex. N at 1 ("To the extent
any modifications and/or additions are necessary based on the Government's continuing
investigation, the Government will submit a supplemental Bill of Particulars prior to trial.")).

Tech Funds to purchase these shares of Clearwire on March 24 and 25, 2008, the Defendant aided and abetted his brother as part of the brothers' concerted engagement in insider trading in the common stock of Clearwire. Indeed, this theory is borne out by the Indictment's allegations, which are wholly sufficient under Fed. R. Crim. P. 7(c).

As an initial matter, there can be no doubt that it is alleged that Rengan and Raj Rajaratnam were engaged in concerted criminal activity relating to the purchase and sale of Clearwire. Rajiv Goel passed material, nonpublic information about Intel's plans to make a strategic investment in Clearwire to Raj Rajaratnam no later than on or about March 20, 2008. (Ind. ¶ 11). The Indictment further alleges that, within a day or two thereafter, Raj Rajaratnam disclosed this inside information to the Defendant. (*Id*. ¶ 12). And, on the very next trading day after March 20, 2008 – March 24, 2008 – not only did Rengan Rajaratnam begin purchasing shares of Clearwire common stock in his personal brokerage account at Fidelity Investments while also causing the Galleon Crossover Fund to do the same, but Raj Rajaratnam caused the Galleon Tech Funds to begin purchasing shares of that very security. (*Id*. ¶¶ 13-15).

But Rengan Rajaratnam did not merely react to information provided to him by his brother. The Indictment is clear that the Defendant took affirmative steps to contribute to the Rajaratnams' scheme – to inform and update Raj Rajaratnam about the progress of their jointly undertaken crime. Indeed, while paragraph 12 makes clear that information was passed from Raj Rajaratnam to the Defendant during the course of the charged conspiracy, paragraph 17 makes equally clear that Rengan Rajaratnam passed information to his brother Raj that furthered their concerted criminal activity. On March 25, 2008, the Defendant called Raj Rajaratnam to report to him the fact that the *Wall Street Journal* had published an online news article after the U.S. stock markets had closed that day that, among other things, reported that Intel had signaled a

22

willingness to invest in a joint venture between Clearwire and Sprint to operate a high-speed nationwide wireless network. (*Id.* ¶¶ 16-17). During that call, the Defendant reported the fact that the "Clearwire stuff" had "just hit the *Wall Street Journal*," editorializing that the men were "fucked." (*Id.* ¶ 17). Rengan Rajaratnam further advised his brother, "'So, I don't know how much you got in today,' referring to Raj Rajaratnam's purchases of Clearwire stock that day, 'but I think [Clearwire's share price] is gonna rip [rise sharply] tomorrow.'" (*Id.*). A fair inference from these allegations – indeed, an inference that a jury could reasonably draw – is that Rengan Rajaratnam was updating his brother with respect to the trades being executed in Clearwire in the Galleon Tech Funds by Raj Rajaratnam, as a material event affecting their trades had just occurred. Were the jury to conclude as much, the Defendant would be convicted properly on Counts Four and Seven of the Indictment under an aiding and abetting theory of liability, as he is indeed charged.

Nothing about the foregoing is inconsistent with the position the Government took at the trial of the Defendant's brother. Indeed, the Government maintains that Raj Rajaratnam directly caused the Galleon Tech Funds to purchase the Clearwire shares at issue on those March 2008 dates using the portfolio manager code "TMT." That fact, however, does not absolve the Defendant of liability for those trades under the law, as the Indictment properly alleges. Consequently, Counts Four and Seven are not fatally inconsistent with Count One (or within themselves), and Rengan Rajaratnam's application to dismiss those counts of the Indictment should be denied.

IV.   **CONTROLLING LEGAL AUTHORITY REQUIRES THAT THE DEFENDANT'S MOTION TO SUPPRESS THE WIRETAP EVIDENCE BE SUMMARILY DENIED**

Rengan Rajaratnam renews the arguments made by his brother, Raj Rajaratnam, with respect to the wiretapped conversations in this matter, which arguments were rejected by Judge Holwell in *United States* v. *Raj Rajaratnam*, 09 Cr. 1184 (RJH), a decision subsequently affirmed on appeal.  *See United States* v. *Raj Rajaratnam*, 719 F.3d 139 (2d Cir. 2013).  Because the Second Circuit's opinion on this issue is dispositive of the arguments the Defendant now adopts, the Court should summarily deny the Defendant's request in this regard.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny the Defendant's motion to dismiss the Indictment and to suppress the Government's wiretap evidence in its entirety.

Dated: February 28, 2014
       New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney

By:   Christopher D. Frey
      Christopher D. Frey
      David I. Miller
      Assistant United States Attorneys
      Tel. No.: (212) 637-2270/2484

24