UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

   -against-

RAJARENGAN RAJARATNAM,
   a/k/a "Rengan Rajaratnam,"

                    Defendant.

13 Cr. 211 (NRB)

**ORAL ARGUMENT REQUESTED**

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
RAJARENGAN RAJARATNAM'S MOTION TO DISMISS THE INDICTMENT AND
TO SUPPRESS THE WIRETAP EVIDENCE**

 

**LANKLER SIFFERT & WOHL LLP**
Daniel M. Gitner
Michael D. Longyear
500 Fifth Avenue, 34th Floor
New York, NY 10110
(212) 921-8399 (telephone)
(212) 764-3701 (facsimile)
dgitner@lswlaw.com

*Attorneys for Rajarengan Rajaratnam*

**TABLE OF CONTENTS**

I. THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO PLEAD AN ESSENTIAL ELEMENT ........................................................................................ 1

    A. *Dirks v. SEC* Requires That a Tippee Must Know that the Tipper Received a Personal Benefit in Exchange for Inside Information ........................................... 1

    B. The Indictment Does Not Comply with Fed. R. Crim. P. 7 .................................... 4

II. COUNTS FOUR AND SEVEN SHOULD BE DISMISSED FOR REPUGNANCY AND FOR FAILING THE *OBUS* TEST ............................................... 6

    A. The Government Ignores the Indictment's Logical Inconsistencies ....................... 7

    B. The Government's New Theory of Aiding and Abetting Liability Runs Afoul of *Obus* ............................................................................................................. 8

III. COUNT ONE IS IMPERMISSIBLY DUPLICITOUS ...................................................... 10

IV. THE WIRETAP EVIDENCE SHOULD BE SUPPRESSED .......................................... 12

CONCLUSION .............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Dirks v. SEC*,
    463 U.S. 646 (1983)..................................................................................................1, 2

*Hamling v. United States*,
    418 U.S. 87 (1974)..........................................................................................................4

*Rosemond v. United States*,
    572 U.S. __, 2014 WL 839184 (Mar. 5, 2014)...............................................................8

*Russell v. United States*,
    369 U.S. 749 (1962)........................................................................................................4

*SEC v. Obus*,
    693 F.3d 276 (2d Cir. 2012)................................................................................... passim

*United States v. Ashley*,
    905 F. Supp. 1146 (E.D.N.Y. 1995) ...............................................................................4

*United States v. Chiasson*,
    12 Cr. 121 (S.D.N.Y.).....................................................................................................4

*United States v. Chiasson*,
    No. 13-1917 (2d Cir.).....................................................................................................4

*United States v. GAF Corp.*,
    928 F.2d 1253 (2d Cir. 1991).......................................................................................11

*United States v. Giordano*,
    416 U.S. 505 (1974).....................................................................................................12

*United States v. Hamilton*,
    334 F.3d 170 (2d Cir. 2003)...........................................................................................9

*United States v. Martoma*,
    12 Cr. 973.......................................................................................................................3

*United States v. McKeon*,
    738 F.2d 26 (2d Cir. 1984)...........................................................................................11

*United States v. Raj Rajaratnam*,
    719 F.3d 139 (2d Cir. 2013).........................................................................................12

*United States v. Rajaratnam*,
   802 F. Supp. 2d 491 (S.D.N.Y. 2011) .................................................................................... 2

*United States v. Salerno*,
   937 F.2d 797 (2d Cir, 1991), *rev'd on other grounds*, 505 U.S. 317 (1992) ......................... 11

*United States v. Universita*,
   298 F.2d 365 (2d Cir. 1962) .................................................................................................. 11

*United States v. Valentine*,
   820 F.2d 565 (2d Cir. 1987) .................................................................................................. 11

*United States v. Van Hise*,
   No. 12 Cr. 847, 2013 WL 6877319 (S.D.N.Y. Dec. 31, 2013) ................................................ 4

*United States v. Whitman*,
   13-491, 2014 WL 628143 (2d Cir. Feb. 19, 2014) .................................................................. 4

*United States v. Whitman*,
   904 F. Supp. 2d 363 (S.D.N.Y. 2012) ............................................................................ 2, 3, 5


**STATUTES**

18 U.S.C. § 2 ................................................................................................................................ 8, 9


**OTHER AUTHORITIES**

Leonard B. Sand, *et al.*, 1 *Modern Federal Jury Instructions: Criminal*, Instruction 11-2
   cmt., at 11-14 to -15 (2013) ..................................................................................................... 9

Fed. R. Crim. P. 7 ........................................................................................................................... 4

Fed. R. Evid. 801(d)(2)(E) ........................................................................................................... 12

Rajarengan Rajaratnam ("Rengan") respectfully submits this memorandum in response to the government's opposition.  First, the government fails to justify how it can stake out a legal position in this case that is inconsistent with the position it took in prosecuting Raj Rajaratnam, and that allows it to prosecute Rengan under a lower standard.  Second, the government sets forth an inaccurate recitation of the law of tippee liability, arguing that that there is no need to allege or prove that Rengan knew the insiders breached a duty in exchange for a personal benefit.  Third, in an attempt to save Counts Four and Seven from their repugnancy, the government disregards the Counts' logical inconsistencies and instead advances a new theory at odds with the plain language of the Indictment and its Bill of Particulars; the requirements of *SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012); and the fundamental underpinnings of aiding and abetting liability.  Finally, the government states that the CLWR and AMD conspiracies were one conspiracy, but ignores that it already acknowledged in the Raj prosecution that they were separate.

## I.    THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO PLEAD AN ESSENTIAL ELEMENT

### A.    *Dirks v. SEC* Requires That a Tippee Must Know that the Tipper Received a Personal Benefit in Exchange for Inside Information

In an effort to persuade the Court that a tippee such as Rengan need not know that an insider breached his duty of confidentiality in exchange for a personal benefit, the government sets forth an inaccurate recitation of the law.  (*See* Govt. Memo at 9-10.)  The government selectively quotes *Dirks v. SEC*, 463 U.S. 646 (1983), to support its contention that a tippee such as Rengan is required to know simply that "the tipper disclosed information in breach of a duty." (Govt. Memo at 9-10.)  The government neglects to point the Court to the next paragraph of *Dirks*, which explains *how* a tippee knows of an insider's fiduciary breach—by knowing of the insider's resulting personal gain:

> [T]he test is whether the insider personally will benefit, directly or indirectly, from his disclosure. *Absent some personal gain, there has been no breach of duty to stockholders. And absent a breach by the insider, there is no derivative breach*.

*Id.* at 662 (emphasis added). From this, several District Courts in this Circuit have concluded—contrary to the government's suggestion—that a tippee's knowledge of whether the insider received a personal benefit in exchange for the inside information is essential to determining whether the tippee is liable.

For example, in Raj's case—which charged the same trades at issue here—Judge Holwell relied on *Dirks* to conclude that tippee liability requires the tippee to know that the tipper breached his duty in exchange for a personal benefit. *United States v. Rajaratnam*, 802 F. Supp. 2d 491, 498-99 (S.D.N.Y. 2011) (acknowledging that "knowledge of tipper breach of fiduciary duty necessitates tippee knowledge of *each element*, including the personal benefit, of the tipper's breach" and holding that "unless the tippee knew that the tipper had satisfied the elements of tipper liability, the tippee cannot be said to be a knowing participant in the tipper's breach." (internal quotation marks and alterations omitted)). The government has nothing to say about Judge Holwell's ruling that tippee liability requires knowledge of the tipper's personal benefit, except to note in passing that the issue was not contested in the Raj trial. (Govt. Memo at 11-12.)

Likewise, the government ignores Judge Rakoff's opinion in *United States v. Whitman*, 904 F. Supp. 2d 363 (S.D.N.Y. 2012), finding that tippee liability requires that the tippee know of the tipper's self-dealing. The Court there reasoned that tippee liability derives from the objective of insider trading cases, which is to protect shareholders from self-dealing by insiders who exploit the duties they owe their company. Accordingly,

2

> [T]*he tippee must have knowledge that such self-dealing occurred*, for, without such a knowledge requirement, the tippee does not know if there has been an "improper" disclosure of inside information.

*Id.* at 371.

Similarly, the government glosses over Judge Gardephe's jury charge in *United States v. Martoma*, 12 Cr. 973, that the government must prove that the defendant tippee knew that the insider breached his fiduciary duty in exchange for a personal benefit. (*See* Gitner Decl., Ex. E; Govt. Memo at 11-12 (noting only that the issue was not contested in that case).)

Not only does the government fail to engage with the recent decisions of District Courts requiring the prosecution to prove tippee knowledge of the insider's personal gain, it also fails to account for the fact that one such case was the insider trading prosecution of Rengan's brother, Raj, regarding the exact same transactions at issue here. The government never explains why it should be permitted to prosecute Rengan under a lower standard for allegedly participating in the same tipping chain where Raj was, according to the prosecution, the principal actor. Fairness dictates that the government should be held to at least the same standard in prosecuting these brothers for allegedly participating in the same conduct—particularly given the case law supporting that standard. (*See* Def. Memo at 10.)

The government steadfastly refuses to recognize the case law holding that tippee knowledge of insider benefit is a required element. The government even argues that, "[a]s for the benefit received by the tipper . . . the Second Circuit has held that the Government need prove only that there was such a benefit, but not that the tippee knew of it." (Govt. Memo at 11.) That proposition is bewildering because there is no Second Circuit opinion holding that the tippee need not know of the tipper's benefit. Rather, just two weeks ago, before the government submitted its brief, the Second Circuit recognized that it has "yet to decide whether a remote

3

tippee must know that the original tipper received a personal benefit in return for revealing inside information," *and* that district courts in the Circuit have reached different conclusions on the issue.[1]  *United States v. Whitman*, 13-491, 2014 WL 628143, at *6 (2d Cir. Feb. 19, 2014) (summary order).

In sum, because Rengan is a remote tippee, the absence of any allegation that Rengan knew the alleged inside information was obtained from an insider in exchange for a personal benefit is a fatal omission that requires dismissal of the Indictment.

### B.     The Indictment Does Not Comply with Fed. R. Crim. P. 7

The government argues that even if the Court finds that a tippee must know that the insider breached his duty in exchange for a personal benefit, the Indictment is still sufficient under Fed. R. Crim. P. 7(c) because it tracks the statutory language at issue.  (*See* Govt. Memo at 5-8.)  This argument is wrong.

An indictment must allege facts sufficient to inform the defendant of the specific offense with which he is charged.  *See United States v. Van Hise*, No. 12 Cr. 847, 2013 WL 6877319, *5 (S.D.N.Y. Dec. 31, 2013).  Tracking the language of the statute is sufficient only "as long as [the words used] themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal quotation marks omitted); *see Russell v. United States*, 369 U.S. 749, 765 (1962) (when the terms of a statute are generic or merely generally descriptive of a criminal act, then an indictment which tracks statutory language is insufficient); *United States v. Ashley*, 905 F. Supp. 1146, 1159 (E.D.N.Y. 1995) (dismissing two counts of

---

[1] For example, in *United States v. Chiasson*, 12 Cr. 121 (S.D.N.Y.), Judge Sullivan held that tippee knowledge of insider benefit is not a required element.  (*See* Def. Memo at 9 n.4.)  That issue is currently on appeal.  The proposed date for oral argument is during the week of April 21, 2014.  *United States v. Chiasson*, No. 13-1917 (2d Cir.) (ECF No. 173).

wire fraud because defendant was not "provided with any facts and circumstances as will inform him of the specific offences coming under the general description, with which he is charged" (internal quotation marks and alterations omitted)).

Tracking the language of the statutes in this case is insufficient for the simple reason that the statutes do not clearly describe insider trading. That is because insider trading derives from "judge-made law" and "has developed in a somewhat *ad hoc* manner." *Whitman*, 904 F. Supp. 2d at 367 & n.1. None of the cases the government cites say anything different—as none of those cases involve insider trading charges against a remote tippee.

The government's claim that the Indictment satisfies the pleading standard because it "provides a copious amount of additional factual detail, fairly informing the Defendant of the charges," (Govt. Memo at 6), misses the point. The Indictment's more colorful details are irrelevant to whether Rengan knew that any of the alleged insiders tipped in exchange for a personal benefit. In support of its claim that Rengan knew the insiders received a personal benefit, the government points only to a single "detail" in its 21-page Indictment—an August 2008 telephone call between Rengan and a business school friend at McKinsey. (Govt. Memo at 7.) That call supposedly shows Rengan trying to "cultivate a[] source of inside information" by offering to hire that individual's wife as a consultant. (*Id*.) The McKinsey individual is *not* one of the insiders alleged to have improperly provided information to Raj's tipping chain. The call hardly substitutes for an allegation that Rengan knew that different insiders from different companies tipped in exchange for personal gain.

First, the government concedes that the only possible inference from the call is that Rengan recognized the obvious—"that the way to corrupt those with inside information was to provide a personal benefit of some kind, including concealed payments." (*Id*.) This call with an

old friend at McKinsey does not show that Rengan knew that insiders from AMD or CLWR were provided benefits in exchange for inside information.  <u>Second</u>, the government misleadingly suggests that this call concerns both the CLWR and AMD insiders.  In fact, the Indictment makes clear that this August 2008 call only concerns the AMD allegations, not the substantively distinct March 2008 CLWR allegations.  (*See* Def. Memo at 10-13 (comparing CLWR and AMD allegations).)  The call occurred five months after the March 2008 CLWR trades were completed.  It has nothing to do with whether the CLWR insider, Rajiv Goel, obtained a personal benefit in exchange for tipping Raj, let alone whether Rengan knew about it.  <u>Third</u>, the government brief neglects to mention that by the Indictment's own admission, Rengan was *joking* when he suggested hiring his friend's wife as a consultant in exchange for information.  (Indictment ¶ 26 ("Rengan Rajaratnam responded to [his friend], *jokingly* . . . ." (emphasis added)).)  The government's selective omission of the word "jokingly" should not persuade the Court that the government properly has pled the crime of insider trading.  (*See* Govt. Memo at 7.)  Surely, it cannot be the government's position that Rengan ought to be criminally liable because he cracked a joke with a friend.

In sum, the government has not pled the crime of insider trading because it has not pled the elements of that crime, including the element that the tippee knew that the insider disclosed confidential information in breach of a fiduciary duty and in exchange for a personal benefit.

## II.   COUNTS FOUR AND SEVEN SHOULD BE DISMISSED FOR REPUGNANCY AND FOR FAILING THE *OBUS* TEST

In response to the defense's argument that Counts Four and Seven should be dismissed as "repugnant," the government ignores the clear language of the Indictment and its own Bill of Particulars; fails to acknowledge the defense argument that Counts Four and Seven are internally inconsistent; and makes concessions that require dismissal of Counts Four and Seven.

6

### A. The Government Ignores the Indictment's Logical Inconsistencies

The Defendant's opening brief makes the common sense argument the Indictment is repugnant because it alleges that Raj *alone* caused the March 24 and 25 CLWR trades in the Tech Funds, while simultaneously arguing that Rengan caused those same trades. (*See* Def. Memo at 18-23.) The government tries to save the Indictment from the obvious inconsistency by advancing the new argument that Counts Four and Seven charge Rengan with "aiding and abetting" the CLWR stock purchases that Raj caused *alone.* (*See* Govt. Memo at 20-23.) The argument makes no sense.

First, if someone causes an action, like a stock purchase, *alone*, then by definition that means that he was not aided in causing that action.

Second, the government's new argument that Counts Four and Seven can survive because they charge Rengan with "aiding and abetting" the March 24 and 25 CLWR purchases in the Galleon Tech Funds is contradicted by the plain language of the Indictment. The Indictment contains a chart that groups together Counts Three, Four, Six, and Seven, and which is preceded by the clause, "Rengan Rajaratnam caused the purchase of [CLWR] common stock . . . as follows." (Indictment ¶ 38.) A plain reading of this chart is that Rengan "caused" the trades alleged in all four counts—not that he "aided and abetted" some trades and "caused" other trades. However, in its opposition brief the government now asserts that Rengan "caused" only the Count Three and Six trades (by directing a trader to make the purchases), and that he aided and abetted the Count Four and Seven trades. (Govt. Memo at 21.) But that is plainly inconsistent with the Indictment.

Third, the government's new "aiding and abetting" argument ignores the plain language of paragraph 8 of the Bill of Particulars, which unequivocally states that Rengan directed certain

7

traders to execute the CLWR purchases on March 24 and 25.[2]  (Gitner Decl., Ex. N ¶ 8 ("With respect to Counts Three, Four, Six and Seven . . . Rengan Rajaratnam caused and/or aided and abetted the purchase of Clearwire common stock *by directing certain Galleon Group traders, including but not limited to [name of trader], to execute those trades . . . .*" (emphasis added)).)

For all of these reasons, the new "aiding and abetting" theory cannot save Counts Four and Seven from repugnancy.

### B. The Government's New Theory of Aiding and Abetting Liability Runs Afoul of *Obus*

The government concedes that Raj was "principally responsible" for causing the March 24 and 25 CLWR purchases in the Galleon Tech Funds, as alleged in Counts Four and Seven, and that Rengan did not direct a trader to execute these trades.  (*See* Govt. Memo at 21-23.)  In order to connect Rengan to those trades and save the Counts, the government now argues that the Bill of Particulars means that Rengan "aided and abetted" those purchases because he "was engaged in concerted criminal activity" with Raj.  (*Id.* at 22.)  But being in "concerted activity" is not the same as "aiding and abetting."  Nor is "concerted activity" enough to satisfy the Second Circuit's standard of tippee liability under *SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012).

Aiding and abetting liability exists only if the defendant "aids, abets, counsels, commands, induces or procures [the trade's] commission" or "causes [the trade] to be done."  18 U.S.C. § 2.  It requires "an affirmative act in furtherance of [the] offense . . . with the intent of facilitating the offense's commission."  *Rosemond v. United States*, 572 U.S. __, 2014 WL

---

[2] In its opposition, the government abandons the purposeful language it crafted in paragraph 8 of the Bill of Particulars by calling it "imprecise language" which led to "confusion [that] is understandable."  (Govt. Memo at 21.)  But paragraph 8 is far from imprecise.  The government took five weeks to respond to the our request to "[p]lease provide information sufficient to identify how Rengan Rajaratnam allegedly 'caused the purchase of Clearwire common stock,' as described in Counts Three, Four, Six, and Seven."  Indeed, the government even named the specific trader that Rengan allegedly used to purchase the CLWR shares in the Galleon Tech Funds. (Gitner Decl., Ex. N ¶ 8.)  The defense was not "confused" by "imprecise[ion]."

839184, at *4 (Mar. 5, 2014).  At the same time, under *Obus*, a final tippee may be liable for insider trading *only if he actually trades* based on inside information.  *Obus*, 693 F.3d at 288 ("The final tippee must both know or have reason to know that the information was obtained through a breach *and trade* while in knowing possession of the information." (emphasis added)).  In fact, the "concerted activity" upon which the government now relies falls well outside Section 2 liability and *Obus*.

<u>First</u>, the government asserts that CLWR stock purchases in the Crossover Fund constitute concerted activity with respect to CLWR stock purchases in the Tech Fund alleged in Counts Four and Seven.  (Govt. Memo at 22-23.)  But it makes no sense to claim that Rengan's trading *outside* of the Galleon Tech Funds furthered Raj's trades *in* the Galleon Tech Funds.  *See United States v. Hamilton*, 334 F.3d 170, 180 (2d Cir. 2003) (aiding and abetting liability requires intent to contribute to the crime at issue).

<u>Second</u>, the government asserts that Rengan made a phone call to "inform and update" Raj about a newspaper article, and this constitutes "concerted activity"  with respect to CLWR trades.  (Govt. Memo at 22-23.)  But Rengan's "update" call to Raj could not have furthered the CLWR purchases at issue because the call occurred many hours *after* the purchases were complete.[3]  *See Hamilton*, 334 F.3d at 180 (defendant may not properly be convicted of aiding and abetting a crime that was completed before his accessorial acts were performed); Leonard B. Sand, *et al.*, 1 *Modern Federal Jury Instructions: Criminal*, Instruction 11-2 cmt., at 11-14 to -15 (2013) ("The defendant's participation must occur before the completion of the crime.").

---

[3] The call between Rengan and Raj took place on March 25, 2008, at approximately 8:22 p.m.  (Indictment ¶ 17.) This is more than a day after the March 24 purchase charged in Count Four, and after the market had closed following the March 25 purchase charged in Count Seven.  Absent an allegation of time travel, it simply cannot be said that the call "aided and abetted" the purchases at issue.

9

The government's theory that a final tippee's vaguely construed "concerted activity" with the tipper translates into the tippee's "aiding and abetting" liability for the tipper's trade would gut *Obus* and exponentially (and dangerously) expand tippee liability.  The government's theory would impose substantive insider trading liability on every downstream tippee where the upstream tipper traded, so long as there was any sliver of evidence that the two were in "concerted activity."  The government cites no case that would support such a broad expansion of tippee liability or "aiding and abetting" liability.  There is none.  *Obus* expressly forbids it.

Counts Four and Seven should be dismissed.

### III.   <u>**COUNT ONE IS IMPERMISSIBLY DUPLICITOUS**</u>

Count One cannot stand as is because it charges both a conspiracy to trade CLWR stock and a conspiracy to trade AMD stock.  (Def. Memo at 10-17.)  In order to cure the prejudice caused by this duplicitous count, the defense moved the Court to order that the government elect one conspiracy upon which to proceed.  (*Id.* at 16-17.)  Apparently misunderstanding the remedy sought, the government chides the defense for failing to cite case law supporting dismissal, and cites a string of inapposite cases supporting its contention that Count One should not be dismissed outright.  (*See* Govt. Memo at 13-19.)  Moreover, the cases cited by the government further miss the point because none of those cases concern a situation in which the government charged distinct conduct as separate conspiracies against one alleged co-conspirator, and then charged that same conduct as a single conspiracy against another alleged co-conspirator.

The government declines to confront the defense's assertion that this same U.S. Attorney's Office already told a Court and a jury that the CLWR and AMD conduct constitute two separate conspiracies.  It did so in the Raj opening, closing, and sentencing, and in briefing before Judge Holwell, as well as in the Goel and Kumar prosecutions.  Nor does the government

contest that the evidence regarding CLWR is fundamentally different than that regarding AMD, with no overlap in time, witnesses, or other proof.

The government's past statements should preclude it from arguing that these conspiracies are not separate.[4] *See United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984) (counsel's statements in previous case may be admissible as a party admission); *United States v. GAF Corp.*, 928 F.2d 1253, 1258-62 (2d Cir. 1991) (applying *McKeon* against government in criminal case); *id.* at 1260 ("Confidence in the justice system cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts."); *United States v. Salerno*, 937 F.2d 797, 811-12 (2d Cir, 1991) (same), *rev'd on other grounds*, 505 U.S. 317 (1992).[5]

Nor does the government's prediction that the jury "would find a single conspiracy here," (Govt. Memo at 16), undo the government's past assertions, resulting in convictions, that the conduct makes up two distinct conspiracies. To state the obvious: no one ever knows what a jury would do. All we can know is what a jury has already done, and we know that the Raj jury found that the exact conduct at issue constituted two distinct conspiracies.

The Court should reject the government's argument that Rengan is not prejudiced by the duplicitous nature of Count One for the reasons set forth in our opening brief at pages 14 through 15. Additionally, allowing the government to combine the two conspiracies together unfairly forces the defense to alter its different defenses to each conspiracy so that they may apply to a single count. And, by labeling co-conspirators that the government previously stated were

---

[4] The government also should be precluded from arguing that the conduct was part of a single conspiracy. *See United States v. Universita*, 298 F.2d 365, 367 (2d Cir. 1962) ("The prosecution has a special duty not to mislead; the government should, of course, never make affirmative statements contrary to what it knows to be the truth."); *see also United States v. Valentine*, 820 F.2d 565, 570 (2d Cir. 1987).

[5] All three of these cases were cited in the defense brief but ignored by the government.

11

involved in only one of the CLWR or AMD conspiracies as being involved in both, the government unfairly has created a situation where that a co-conspirator's statements might be improperly used as proof of a conspiracy in which he was not involved.  *See* Fed. R. Evid. 801(d)(2)(E).  The government ignores these problems.

**IV. THE      WIRETAP EVIDENCE SHOULD BE SUPPRESSED**

The government contends that the Second Circuit's decision in *United States v. Raj Rajaratnam*, 719 F.3d 139 (2d Cir. 2013), "is dispositive" of whether the wiretap should be suppressed.  (Govt. Memo at 24.)  But, in dealing with the government's misleading affidavits, the Second Circuit substituted the requirements of Title III with rules judicially crafted under the Fourth Amendment.  This substitution cannot be reconciled with the Supreme Court's decision in *United States v. Giordano*, 416 U.S. 505 (1974), which makes clear that Title III's statutory requirements may not be ignored.  *Id*. at 527 ("Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures . . . .").  Because the wiretap applications did not satisfy Title III's requirements, the wiretaps should be suppressed.

## CONCLUSION

The Indictment should be dismissed, or in the alternative, Count One should be found duplicitous and Counts Four and Seven should be dismissed. Additionally, the wiretap evidence should be suppressed.

Dated: March 7, 2014
       New York, NY

Respectfully submitted,

By _____
Daniel M. Gitner
Michael D. Longyear

LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue, 34th Floor
New York, NY 10110-3398
(212) 921-8399 (phone)
(212) 764-3701
dgitner@lswlaw.com

*Attorneys for Rajarengan Rajaratnam*