LANKLER SIFFERT & WOHL LLP                    REDACTED

ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

April 3, 2014


VIA FACSIMILE

Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

      **Re:**    **United States v. Rajarengan Rajaratnam, 13 Cr. 211 (NRB)**


Dear Judge Buchwald:

      We represent Rengan Rajaratnam in the above matter and respectfully submit this letter in connection with the government's April 2 production (the "government's Production").  In response to the Court's request to produce Indictments and Bills of Particulars in other cases, the government took the opportunity to reargue its opposition to the defense's motion.  We respectfully submit this reply in response to the government's letter.

      Although the government's Production concerns the government's prior positions in this matter, the cover letter accompanying that production continues to ignore the fact that the government previously told several Courts (and a jury) that the CLWR conspiracy and the AMD conspiracy are separate.  The cover letter also ignores that the information contained in the government's Production confirms that the conspiracies were separate—including the fact that the government has previously admitted that the CLWR conspiracy ended in May 2008 (months before the AMD conspiracy began).  Lastly, the government makes no attempt to defend the unfair prejudice caused by the duplicity of Count One.

<u>**Responses to Specific Arguments**</u>

      The government's letter misunderstands the defense's motion.  The defense does not argue that a conspiracy to trade on inside information can never involve two separate securities. (*See* Govt. Ltr. at 2.)  Rather, the defense argues that the conspiracy charged in Count One is duplicitous because it charges two separate conspiracies to trade on inside information.

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald                                    REDACTED
April 3, 2014
Page 2


        In fact, rather than defend Count One of *this* Indictment, the government seeks refuge in
Count One of the Second Superseding Indictment *against Raj* (the "Raj Indictment").  The
government claims that the conspiracy charged in Count One in this case is "consistent" with the
conspiracy charged in Count One of the Raj Indictment.  (Govt. Ltr. at 2.)  But Count One of the
Raj Indictment cannot save the government because the conspiracy charged in Count One in this
case is manifestly different than the conspiracy charged in Count One of the Raj Indictment.

        In the Raj case, the government named Rengan (and many others) as co-conspirators in
Count One, which was charged as a discrete conspiracy to trade securities in dozens of
companies.  But what the government's letter neglects to include is what the government's
production makes clear: the government did *not* name Rajiv Goel, Anil Kumar, ██████████
or ██████████ as co-conspirators in that discrete conspiracy.  Rather, the government made clear
that Goel, Kumar, █████, and █████ were *not* co-conspirators in Count One of the Raj Indictment.
In fact, the Raj Indictment made clear that its Count One involved "Galleon employees," (Raj
Indictment ¶ 3), and Goel, Kumar, █████ and █████ were not Galleon employees.  The
government's PowerPoint during the Raj closing showed that this "Galleon Conspiracy" was
separate and distinct from the Kumar, Goel, *and* █████ conspiracies. (*See* Exhibit A
(government PowerPoint slide).)

        Simply put, the government may wish that it charged in Count One in this case the same
conspiracy it charged in Count One of the Raj Indictment, but it did not.

        To the extent the government does defend Count One in this Indictment, the government
seeks to do so by arguing that Goel and Kumar are "properly designated" as co-conspirators.
(Govt. Ltr. at 2-3.)  But the cases it cites have nothing to do with duplicity, and only confirm
what the Court has already indicated: that "Raj Rajaratnam . . . can conspire with a whole bunch
of people above [him]—we'll call them tippers."  (March 27, 2014 Oral Argument Transcript
("Tr.") at 14.)  The point is not whether an Indictment can allege that a tipper conspired with
downstream tippees.  The point is that in the Raj Indictment, Goel and Kumar are co-
conspirators with Raj in *separate* conspiracies; and, in fact, the government's Production
demonstrates that it has admitted as much several times over.

        Remarkably, the government even tries to convince this Court that Count One is properly
charged because "both Goel and Kumar knew of the Defendant" and it was "at least reasonably
foreseeable to Goel and Kumar that Raj would convey their tips to his brother."  (Govt. Ltr. at 3.)
The government makes this misleading argument without citation.

        <u>First</u>, at the Raj trial, Goel testified (on more than one occasion) that he *did not* know
Rengan until after the time period set forth in the Indictment.  (*See* Raj Trial Transcript at

LANKLER SIFFERT & WOHL LLP

REDACTED

Hon. Naomi Reice Buchwald
April 3, 2014
Page 3

1956:9-10 ("Q: Had you had conversations or heard Mr. Rengan Rajaratnam speak? A: As of this date [March 25, 2008], no, I never met him."); 2234:10 ("I didn't even know Mr. Rengan at the time [March 25, 2008].").)  The premise of the government's argument—that Goel is properly included as a co-conspirator because he knew Rengan and could foresee that Raj would pass his tip to him—is therefore demonstrably false.

      Second, the government's suggestion that a tipper could foresee that Raj would pass a tip to Rengan *because* he was Raj's brother is offensive and should not be countenanced.  In the absence of evidence to support the argument that a tipper could foresee that Raj would pass the tip to Rengan, the government should not be allowed to suggest that their familial relationship in and of itself suggests a conspiratorial agreement between them.

## The Government's Production Confirms That Count One Is Duplicitous

      Count One purports to allege a single conspiracy to trade stock in CLWR and AMD in 2008 based on inside information, but the government's Production—which contains previously non-public documents—confirms that Count One improperly combines two discrete conspiracies in a single count.  Indeed, the government's Production confirms that the CLWR and AMD conspiracies involve different companies, different alleged insiders, different means and methods, and occurred during two distinct, non-overlapping time periods in 2008—and that the government previously admitted as much.

      First, despite the government's representations to the contrary at the March 27 oral argument (Tr. at 22:8 ("it's all within the course of a year, 2008")), the government's Production makes clear that the CLWR and AMD conduct occurred at separate times with no overlap.  The government's Bill of Particulars in the Raj case states that the CLWR conduct began in February 2008 and *ended* in May 2008.  (*See* March 22, 2010 Letter from AUSA Reed Brodsky to John Dowd, at 4.)  The AMD conduct, as alleged in the instant Indictment, began in August and lasted until late 2008.

      Second, the government has listed the following people as Rengan's co-conspirators in Count One: Raj Rajaratnam; ███████████; Rajiv Goel; Anil Kumar; ████████████; and ██████.  But it is now apparent that in the Raj Indictment and that case's accompanying Bills of Particulars:

           1. The government named Goel as a co-conspirator in a discrete conspiracy to trade CLWR stock, but did *not* name Kumar, ████████████, *or Rengan* as co-conspirators in that discrete conspiracy (Raj Indictment, Count Three);

           2. The government named Kumar as a co-conspirator in a discrete conspiracy to

LANKLER SIFFERT & WOHL LLP

REDACTED

Hon. Naomi Reice Buchwald
April 3, 2014
Page 4

> trade, among other things, AMD stock, but did *not* name Goel, ████████ *or Rengan* as co-conspirators in that discrete conspiracy (Raj Indictment, Count Four);[1] and

> 3.  The government named ████ and Kumar as co-conspirators in a discrete conspiracy to trade AMD and Akamai, but did *not* name Goel, ████ *or Rengan* as co-conspirators in that discrete conspiracy (Raj Indictment, Count Five).

The government's Production shows that while in this case the government alleges that certain individuals are co-conspirators in a "single" CLWR/AMD conspiracy, the government never before alleged that these individuals were co-conspirators with Rengan. Rather, in cases involving the exact same conduct at issue here, the government previously alleged (and convinced a jury, and had people sentenced accordingly) that these same individuals were co-conspirators with other parties (and *not* with Rengan) in other, separate conspiracies—including a distinct CLWR conspiracy and a distinct AMD conspiracy.

The government's cover letter not only ignores these facts, but also ignores the manifest harm that the duplicitous nature of Count One causes.

## I.   Due Process Harm

The government has violated Rengan's due process rights by radically changing its theory regarding the same events and same people in successive criminal prosecutions. The government ignores the due process issue in this case, even though it was discussed at oral argument.

The government has admitted several times to several courts and a jury that the conspiracy alleged in Count One actually consists of several separate conspiracies, but insists on going forward with the charge as drafted. To date, the government's voluntary Rule 16 productions seem to be copies of the government's productions in the Raj case, so it does not appear that any intervening developments explain the government's shift in theory. Under these circumstances, the government's duplicitous theory and attempt to take inconsistent positions in successive prosecutions against different defendants accused of engaging in the same conduct and transactions cannot survive. *See Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) ("[T]he use of inherently factually contradictory theories violates the principles of due process."); *accord, e.g., Stumpf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004), *vacated on other grounds sub nom., Bradshaw v. Stumpf*, 545 U.S. 175, 186–88 (2005); *Thompson v. Calderon*, 120 F.3d 1045, 1058-59 (9th Cir. 1997) (finding that "little about [two] trials remained consistent

---

[1] Additionally, neither of the Criminal Informations filed against Goel or Kumar names Rengan as a co-conspirator.

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald                                        REDACTED
April 3, 2014
Page 5

other than the prosecutor's desire to win at any cost" and stating that "it is well established that
when no new significant evidence comes to light a prosecutor cannot . . . offer inconsistent
theories and facts regarding the same crime"), *rev'd on other grounds*, 523 U.S. 538 (1998);
*Drake v. Kemp*, 762 F.2d 1449, 1479 (11th Cir. 1985) (Clark, J., concurring) ("[T]he
prosecution's theories of the same crime in the two different trials negate one another.  They are
totally inconsistent.  This flip flopping of theories of the offense was inherently unfair . . . .
[T]he actions by the prosecutor violate that fundamental fairness essential to the very concept of
justice . . . .  The state cannot divide and conquer in this manner.  Such actions reduce criminal
trials to mere gamesmanship and rob them of their supposed purpose of a search for truth."
(citation omitted)); *see also Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States
Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty
whose obligation to govern impartially is as compelling as its obligation to govern at all; and
whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice
shall be done.").[2]

## II.     Evidentiary Prejudice

By combining multiple conspiracies into one, the government's case will prejudice the
defense by potentially allowing evidence that is only relevant to one of the separate conspiracies
to be admitted as to both conspiracies.

First, the defense is unfairly prejudiced because the government has named people as
Rengan's co-conspirators even though the government previously conceded that these
individuals were no such thing.  As a result of combining discrete conspiracies into one count,
the government might try to argue that Goel (for example) could testify about the means and
methods of the charged "single" conspiracy, on the theory that Goel is a named co-conspirator.
But in prior matters the government made clear that Goel was not a co-conspirator in any
agreement involving Kumar or ███, or ███—or, most importantly, *Rengan*.  Conversely, the
government could try to admit statements made by any of the alleged AMD co-conspirators to
prove the CLWR part of the conspiracy, even though those statements came later in time.  This
gives the government multiple bites at the apple to prove the conspiracy, whereas against Raj,
the government only had one bite with each separate apple.

Second, the defense is unfairly prejudiced because the duplicitous count falsely expands
the duration of the CLWR conspiracy.  In its first Rule 404(b) notice, the government identified
alleged conduct that occurred in July 2008.  By combining the CLWR and AMD conspiracies

---

[2] *See also* Anne Bowen Poulin, *Prosecutorial Inconsistency, Estoppel, and Due Process: Making the Prosecution
Gets Its Story Straight*, 89 Cal. L. Rev. 1423, 1423 (2001) (arguing that "the prosecution should be prohibited from
exploiting inconsistent positions in separate proceedings, suggesting that prosecutorial inconsistency violates the
defendant's right to due process").

Lᴀɴᴋʟᴇʀ Sɪꜰꜰᴇʀᴛ & Wᴏʜʟ ʟʟᴘ

Hon. Naomi Reice Buchwald
April 3, 2014
Page 6                                                                              REDACTED

and alleging that the conspiracy continued through July—when in fact the government's
Production makes clear that the alleged CLWR conduct ended in May and the alleged AMD
conduct began in August—the defense is prejudiced with regard to the proper admissibility and
uses of such Rule 404(b) evidence.  *See, e.g.*, *United States v. Aquart*, 06 Cr. 160, 2010 WL
3211074, at *9 (D. Conn. Aug. 13, 2010) (questioning whether "*subsequent* conduct could be
probative of [defendant's] earlier state of mind").  Moreover, because the defenses to the two
conspiracies are different, any Rule 404(b) evidence might be admissible only as to either the
CLWR or AMD conspiracies, but not as to both.

    Third, the government's Production further shows the significant risk of prejudicial
evidentiary rulings in circumstances where evidence that should be admissible only as to either
the CLWR conspiracy or the AMD conspiracy ends up admitted as to both.  For example, an
element of conspiracy is an agreement between at least two people.  Here, the government has
named many people who allegedly participated in a single conspiracy, even though it previously
charged those people with engaging in separate conspiratorial agreements.  As a result, there is a
risk that evidence regarding any one of these individuals could be used to prove the existence of
the same, "single" charged conspiracy, even though the government has already admitted that
these individuals were members of different conspiratorial agreements.  Similarly, another
element of conspiracy is willful participation in an agreement.  By combining several
conspiracies into one, the government has increased the number of people in the alleged
conspiracy, even though it has previously admitted that these individuals were not members of
the conspiracy.  This unfairly allows improper inferences concerning Rengan's interactions with
those individuals.

## III.    Deprivation of the Right to a Unanimous Jury Verdict

    The government's Production confirms the risk of a non-unanimous verdict by
concealing a finding of "guilty" as to one separate conspiracy and a finding of "not guilty" as to
the other—or by concealing what should be an acquittal as to both conspiracies.

    First, the defense is prejudiced because the jury could find elements of half of the CLWR
conspiracy and half of the AMD conspiracy, and as a result enter a guilty verdict on Count One
even though there was never unanimity as to all the elements of each conspiracy.  In such a
circumstance, Rengan should be acquitted of both conspiracies, but the Count as charged would
allow for jury confusion and a finding of guilty.

    Second, as Count One currently stands, the jury may not be unanimous as to whether
Rengan entered into an illegal agreement to commit securities fraud.  Some members of the jury
may find only an agreement as to CLWR, while others may find an agreement only as to AMD.

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald                                    REDACTED
April 3, 2014
Page 7

Third, the defense is unfairly prejudiced specifically with regard to the "personal benefit element." We recognize that the Court has not ruled on this element, but for the sake of argument assume that the Court and/or the Second Circuit agrees that the government must prove that Rengan knew that an insider disclosed information in exchange for a personal benefit. As Count One stands, the government could prove that element with evidence regarding the disclosure of CLWR information *or* AMD information. However, for all the reasons previously stated, the CLWR conduct and AMD conduct are separate parts of distinct conspiracies. To convict Rengan of the CLWR conspiracy, the government should have to prove (and the jury unanimously should find) that Rengan knew the CLWR information was disclosed in exchange for a personal benefit. Similarly, to convict Rengan of the AMD conspiracy, the government should have to prove (and the jury unanimously should find) that Rengan knew the AMD information was disclosed in exchange for a personal benefit. That the government "smushed" these two conspiracies into one unfairly creates the risk that the jury will not be unanimous on an essential element of the crime, because hypothetically half the jurors could be convinced with regard to the CLWR information and the other half with regard to the AMD information.

Fourth (and similarly), even if the Court finds that Rengan need not have known that the information was disclosed in exchange for a personal benefit, the duplicitous count prejudices the defense with regard to the "confidentiality elements." The government must prove that the confidential information at issue was, in fact, confidential, and that Rengan knew as much. As Count One stands, the government could prove either of those elements with evidence regarding the confidentiality of CLWR information *or* AMD information, and the jury may not be unanimous as to the confidential nature of the information.

**Counts Four and Seven Should Be Dismissed**

Absent from the government's cover letter is any mention as to why Counts Four and Seven should survive. And with good reason. The government's Production makes clear that the trade charged in Count Four of this Indictment was an overt act in the conspiracy charged as Count Three of the Raj Indictment—and the government's Production confirms that Rengan was not named in the Bill of Particulars as a co-conspirator in the Raj Indictment's Count Three. By taking a new and inconsistent position in *this* prosecution—namely, that Rengan is somehow responsible for the trade—the government further deprives Rengan of his due process rights. *See Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000); *Stumpf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004); *Drake v. Kemp*, 762 F.2d 1449, 1479 (11th Cir. 1985).

In fact, with regard to Counts Four and Seven, the government has acknowledged the infirmities in its theory, (Tr. at 32 ("it may pose an issue, and [] it may be the government elects not to proceed on those counts at trial"), but asked Your Honor not to dismiss the counts. Despite the Court's statement that the government may want to rethink the advisability of going

Lankler Siffert & Wohl llp

Hon. Naomi Reice Buchwald
April 3, 2014
Page 8

REDACTED

forward with these counts, nothing in the government's Production or its cover letter supports the government's aiding and abetting theory for Counts Four and Seven. It remains wholly unsupported by any proof. As a result, the government lacks a good faith basis to proceed. *See, e.g.*, *United States v. Green*, 324 F. Supp. 2d 311, 322 (D. Mass. 2004) ("[T]he government must at the very least show a good faith basis for its RICO accusations since it opens the door wide to prejudicial evidence."). Moreover, the government has never even tried to articulate how its theory—that Rengan somehow "aided" Raj's trades—can survive as consistent with the Indictment's separate allegation in paragraph 15 that Raj made the trades *alone*. (*See* Def. Memo. at 19-21; Def. Reply Memo. at 7-8.) The counts remain fatally flawed.

\* \* \*

For the foregoing reasons, as well as the reasons set forth in our motion to dismiss the Indictment, Count One is impermissibly duplicitous and Counts Four and Seven should be dismissed.

With regard to Count One, the government should be ordered to elect. The government's unsupported insistence that an election remedy "simply does not follow, logically or legally," (Govt. Ltr. at 3), is at odds with the law cited in our previous briefs explaining the appropriate pre-trial remedy for a duplicitous count.

Respectfully submitted,

Daniel M. Gitner

cc:    AUSA Christopher D. Frey (by e-mail)
       AUSA David I. Miller (by e-mail)

REDACTED

# EXHIBIT A

REDACTED



1.Kumar Conspiracy

2.Goel Conspiracy

3.Galleon Conspiracy