

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 2, 2014

**BY FACSIMILE AND ECF**

The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Rajarengan Rajaratnam, a/k/a "Rengan Rajaratnam,"
                  13 Cr. 211 (NRB)</u>

Dear Judge Buchwald:

      The Government respectfully submits this letter in connection with Your Honor's inquiry regarding extradition from Brazil at today's oral argument. The Government has examined the underlying law and facts, and proffers the following supplemental information:

- The operative treaty regarding extradition between the United States and Brazil was entered into force December 17, 1964. Article II of this Treaty identifies 32 separate crimes for which Brazil will extradite an individual.[1] Article II further provides that attempts and participation, *i.e.* conspiracy, for any of the 32 enumerated offenses are extraditable;

- Section 17 of Article II identifies "larceny" as an extraditable offense, Section 18 identifies "[o]btaining money, valuable securities or other property by false pretenses," Section 19 identifies "[r]eceiving any money, valuable securities or other property knowing the same to have been unlawfully obtained," and Section 20 identifies as extraditable "[f]raud or breach of trust by a bailee, banker, factor, trustee, executor, administrator, guardian, director or officer of any company or corporation or by anyone in any fiduciary capacity";

- Subject to these provisions, individuals have been extradited to the United States from Brazil for various fraud offenses, including Securities Fraud. *See, e.g.*, *United States* v. *Yanes*, 542 Fed. Appx. 797, 803 (11th Cir. 2013) (observing, in health care fraud

---

[1] A subsequent amendment prohibits the extradition of Brazilian citizens – that feature of Brazilian extradition law is irrelevant here, since the defendant was never a citizen.

Hon. Naomi Reice Buchwald, U.S.D.J.
June 2, 2014
Page 2

prosecution, "[i]n fact, in a sentencing memorandum Yanes conceded a 'substantial' difference between himself and his co-conspirators because he had to be extradited from Brazil to face charges, and at sentencing, Yanes described his flight to Brazil as an 'aggravating factor.'"); *United States* v. *Paul*, 634 F.3d 668, 671 (2d Cir. 2011) ("In December 2000, Paul suddenly departed for Brazil. On June 8, 2001, a grand jury in the Eastern District of New York returned a two-count indictment charging Paul with conspiracy to commit securities fraud and securities fraud. Between August 2001 and July 2003, Paul was incarcerated in Brazil, awaiting extradition to the United States. Paul was arraigned on September 15, 2003 and, on January 21, 2005, Paul was released on bail, subject to home detention and electronic monitoring");

- A red notice was filed with Interpol for the defendant in connection with the instant charges. The Government also had initiated the process for seeking the defendant's extradition[2] – in connection, the Government contemporaneously engaged in discussions with prior defense counsel regarding possible steps that could be taken, including voluntary return to the United States, which would allow the defendant to avoid Brazilian detention. The defendant also communicated with the State Department about his desire to avoid Brazilian detention and relatedly coordinated with both the State Department and the FBI about plans to return under FBI escort to the United States.

The Government submits that, based on all of these factors, the defendant simply is not in a similar position to the defendant in *Biaggi*, who sought to introduce evidence that he had rejected an offer of complete immunity. *See United States* v. *Biaggi*, 909 F.2d 662, 689-90 (2d Cir. 1990). The point of *Biaggi* was that there was a reasonable argument, if the jury accepted the defendant's version of the facts, that *only* an innocent man would reject an offer of total immunity when facing a slew of serious federal charges. *See id.* The subsequent decisions which have rejected attempts to extend *Biaggi* have all been based on the fact that where, as here, a defendant engages in activity more susceptible to alternative interpretations, supposed "consciousness of innocence" evidence should be excluded. Thus, in *United States* v. *Wilson*, Judge Cote rejected the argument that a defendant's declination of a deferred prosecution agreement was analogous to *Biaggi*, and excluded this evidence. *See United States* v. *Wilson*, No. 98 Cr. 640 (DLC), 1998 WL 770561 at *2 (S.D.N.Y. 1998) ("This is not a case, therefore, where the defendant faced a simple and stark 'opportunity to preclude all exposure to a conviction and its consequences.' *Biaggi*, 909 F.2d at 691. In other words, unlike the defendant in *Biaggi*, Wilson had many reasons to choose trial and to reject the Government's offer quite apart from any considerations of innocence or guilt"), *aff'd* 201 F.3d 433 (2d Cir. 1999); *see also United States* v. *Goffer*, 721 F.3d 113 (2d Cir. 2013) (rejecting securities fraud defendant's

---

[2] The Government stated at oral argument that it believed a Provisional Arrest Warrant had issued in Brazil for Mr. Rajaratnam. The Government has examined the record of DOJ's extradition efforts related to the defendant, and it appears that after the Office of International Affairs approved the PAW and transmitted it to Brazil, it was almost immediately withdrawn before it was formally "filed," because the defendant by that point had voluntarily returned to the United States.

Hon. Naomi Reice Buchwald, U.S.D.J.
June 2, 2014
Page 3

attempt to analogize his rejection of plea offer to *Biaggi*, writing "[t]he defendant in *Biaggi* was offered complete immunity. *Id.* Relying on the difference between this and 'an offer to plead guilty to reduced charges,' we held that a defendant's decision to reject an offer of *immunity* was probative . . . . [Goffer's case] was not a case where the defendant was permitted to walk away scot free and declined to do so out of a strong belief of his innocence") (emphasis in original).

 Similarly, the defendant here did not have the possibility of walking away "scot free" simply by remaining in Brazil. He faced the likelihood of a long extradition process that would almost certainly end with his extradition. And as Your Honor indicated at oral argument, the question of whether the defendant possibly faced extradition is highly significant to the determination of the admissibility of this evidence. It is clear now that he did face extradition, and indeed faced the possibility of detention in a Brazilian facility while the often lengthy extradition process played out. Indeed, the media has reported on other prominent financial criminals who have been recently detained in Brazil while awaiting international extradition. *See, e.g.* Matt Sandy, "Michael Misick: Turks and Caicos Premier facing extradition from Brazil," THE TELEGRAPH, April 28, 2013 (describing the lengthy detention of former foreign political official awaiting extradition on British charges of having illegally sold certain real estate, writing "'[t]his arrest serves to discredit the idea that major international criminals can live peacefully and spend their dirty money in Rio,' said the city's Interpol chief, Orlando Nunes"), available at http://www.telegraph.co.uk/news/worldnews/centralamericaandthecaribbean/turksandcaicosislands/10022501/Michael-Misick-Turks-and-Caicos-premier-facing-extradition-from-Brazil.html.

 Given these circumstances, the defendant may have reasonably believed the safest course was to return voluntarily and litigate the criminal charges against him while bailed. He may have concluded that it was more reasonable to expend whatever resources he possessed on the inevitable criminal litigation here rather than the losing litigation in Brazil. He may have simply found distasteful the possibility of never being able to return to the United States, given his substantial contacts in this country. Whatever the defendant's motivations, it cannot be credibly argued that the *only* explanation for his return to the United States was innocence. Given this fact, the Court should reject the defendant's proffered "consciousness of innocence" evidence.

             Respectfully submitted,

             PREET BHARARA
             United States Attorney

      By:  _____/s/_____
             Christopher D. Frey
             Randall W. Jackson
             Assistant United States Attorneys
             (212) 637-2270/1029

cc:  Daniel Gitner, Esq. (By E-mail)