

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 25, 2014

**BY FACSIMILE AND BY ECF**

The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 2270
New York, New York 10007

   Re: United States v. Rajarengan Rajaratnam, a/k/a "Rengan Rajaratnam,"
      13 Cr. 211 (NRB)

Dear Judge Buchwald:

  The Government respectfully submits this letter in response to the defendant's letter of today (the "June 25 Letter"), requesting that a statement proffered to the Government by counsel for David Palecek that Palecek did not provide confidential information about McKinsey clients to Rengan Rajaratnam be admitted into evidence at trial.  For the reasons set forth below, the defendant's request should be denied.

  The defendant's request flows from the erroneous base assertion that the Government adopted Palecek's counsel's statement by including it in a bill of particulars in United States v. Raj Rajaratnam, 09 Cr. 1184 (RJH), thereby rendering it an admission by the Government.  First, at no time has the Government relayed counsel's statement in any bill of particulars – in this case or in the Raj Rajaratnam matter.  On its face, the Government's December 2, 2010 letter to defense counsel in the Raj Rajaratnam matter is clearly not a bill of particulars.  While paragraph C of that letter "supplements the information provided" in "the Bill of Particulars previously provided in [that] matter," counsel's proffer to the Government is set forth in a separate paragraph – paragraph D – that has absolutely nothing to do with the Government's Bill of Particulars in the Raj Rajaratnam matter.  (See Exhibit B to the June 25 Letter).  Instead, paragraph D merely relays certain "representations" from "counsel representing various individuals and companies," and make clear that "the Government does not credit all of th[o]se representations."  (Id.).

  Second, in disclosing that statement to defense counsel in this matter by letter dated July 26, 2013, the Government merely repeated the proffered statement to satisfy its various disclosure obligations.  (See Exhibit A to the June 25 Letter).  That the Government discharged its obligations pursuant to United States v. Triumph Capital Group, Inc., 544 F.3d 149 (2d Cir. 2008) (noting the Government's duty to disclose potentially exculpatory or impeachment

Hon. Naomi Reice Buchwald, U.S.D.J.
June 25, 2014
Page 2

material learned from a proffer by an attorney making factual representations that are attributable to that attorney's client), in no way suggests that the Government "credited Mr. Palecek's representation." (June 25 Letter at 2). In fact, a reasonable jury could draw the inference from the Government's evidence that the statement was not credible. In any event, there is no precedent for admitting the Government's discovery letters in evidence.

The proffered statement that the defendant seeks to admit is classic hearsay. While the defendant seeks its admission pursuant to the residual exception to the rule against hearsay set forth in Federal Rule of Evidence 807, the Second Circuit has noted that the residual hearsay exception is to be "applied in the rarest of cases." United States v. DeVillio, 983 F.2d 1185, 1190 (2d Cir. 1993). Here, the statement bears none of the guarantees of trustworthiness that nonetheless might render it admissible. First, the statement was made after Raj Rajaratnam, Anil Kumar, and others were charged by the Government and arrested, and there is thus a high risk that it is a self-serving statement made on behalf of an individual who viewed himself as a suspect in the Government's ongoing investigation. In this regard, courts in this District have noted the inherent unreliability in such self-exculpatory statements. See, e.g., United States v. Camacho, 163 F. Supp. 2d 287, 308 (S.D.N.Y. 2001) (noting that statements to law enforcement and prosecutors by criminal suspects or defendants are not considered to be reliable, because the declarant generally wants to obtain favorable treatment).

Furthermore, the notion that the purposes of the Rules of Evidence support the admission of this statement is in conflict with Rule 804, the rule addressing the admission of statements made by unavailable declarants. For a deceased declarant, such as Mr. Palecek, the only possible exception in Rule 804 which could be applied to the statement at issue is the provision excepting from the hearsay rule statements against interest. See Fed. R. Evid. 804(b)(3). As is obvious, however, the proffered statement is the opposite of a statement against interest – it is a purely exculpatory statement that was passed through an attorney to a federal prosecutor in the context of an ongoing investigation. The provision excepting statements against interests allows such a statement to be admitted only if it is one that "(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary and pecuniary interest or had so great a tendency to . . . expose the declarant to civil or criminal liability" and "(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." Fed. R. Evid. 804(b)(3). It seems obvious that the Rules would not have excepted only statements against interest and created such significant hurdles for the admission even of these statements, if the intent was also to admit any statement by an unavailable declarant that was the exact opposite of a statement against interest. Implicit in the statement against interest exception is the understanding that there is some inherent reliability in a statement one makes which has a great tendency to expose the declarant to criminal liability – no such inherent reliability exists with regard to self-exculpatory statements.

Moreover, the proffered statement is at the far extreme of unreliability on the spectrum of corroborating circumstances. A statement proffered through an attorney in the course of a federal investigation, which only exculpates the declarant, is undermined by the circumstances.

Hon. Naomi Reice Buchwald, U.S.D.J.
June 25, 2014
Page 3

For this reason, courts have refused to admit a number of statements on the basis of a lack of corroborating circumstances even where the defendants could meet the first requirement of Rule 804(b) that the statement be against the declarant's penal interest.  See, e.g., United States v. Paulino, 445 F.3d 211, 220 (2d Cir. 2006) (affirming the exclusion, based on lack of "requisite corroborating circumstances," in case where hearsay declarant was father of defendant who claimed responsibility for narcotics at issue in trial, writing "[a]s the district court correctly observed, the circumstances at issue hardly demonstrated Adolfo Paulino's personal trustworthiness because he had 'an obvious motive to lie to protect his son.'").  Importantly, in Paulino, the Second Circuit further indicated that, where the statement is passed through an attorney, this may reduce the trustworthiness of the statement.  Paulino, 445 F.3d at 220 ("Indeed, he may not even have thought that the statement could be used against him precisely because it was made to a defense attorney: 'he may have felt that the statement was privileged.'")  (quoting Judge Cote's findings at trial).

A similar point was made by the Second Circuit in United States v. Salvadore, 820 F.2d 558, 562 (2d Cir. 1987), in which the court stated that the circumstances failed to corroborate a hearsay statement because the declarant "knew [the defendant] and had a motive to lie for him," and moreover "he did not make the statement spontaneously, and he made the statement to the prosecutor, who was in a position to affect the charges against [the defendant]."  Similarly, here, Palecek knew Rengan Rajaratnam, developed a friendship with him that apparently reached back to business school, and was communicating through his attorney to a prosecutor.  This is the opposite of circumstances indicating reliability, and again, here we are not even dealing with an actual statement against interest.  And finally, related to that point, the Second Circuit has indicated that Rule 807 cannot be used to circumvent the requirements of Rule 804.  See United States v. Yildiz, 85 Fed. Appx. 239, 241-42 (2d Cir. 2004) ("Since Tsalevich's statement that he 'didn't discuss' the robbery with Yildiz 'did not in any way inculpate Tsalevich or expose him to criminal liability' beyond his previous statement that he was guilty, it was not a statement against his interest admissible pursuant to either Rule 804(b)(3) or the residual hearsay exception of Rule 807") (brackets omitted) (quoting United States v. Jackson, 353 F.3d 170, 179 (2d Cir. 2003) ("Brown's statements that he never supervised Jackson and never asked Jackson to go to Jamaica to smuggle drugs did not in any way inculpate Brown or expose him to criminal liability. Accordingly, the separate guarantee of trustworthiness required by Rule 804(b)(3) is non-existent as to these statements.  If anything, these statements were probably exculpatory as to Brown").

The defendant's reliance on a contemporaneous e-mail that Palecek wrote to Anil Kumar following his meeting with the defendant on August 15, 2008 to suggest that the proffered statement is trustworthy is misplaced, and cannot render the inherently untrustworthy statement admissible.  (See June 25 Letter at 4 and Exhibit D).  To the extent Rengan sought confidential information from Palecek, as Rengan admitted to his brother he had done in recorded telephone conversations that same day, it is highly unlikely that Palecek would have disclosed as much to his partner at McKinsey in writing using his business e-mail account.

Hon. Naomi Reice Buchwald, U.S.D.J.
June 25, 2014
Page 4

    Moreover, the fact that, as demonstrated by the recorded conversations already in evidence, Palecek was engaging in conversation about the AMD deal with Rengan and alerting Anil Kumar, who was on the other side of McKinsey's "Chinese wall" in the transaction, to Rengan's overtures also undermines the suggestion that the self-exculpatory proffered statement is inherently reliable.

    Finally, the proffered statement – that Palecek did not disclose confidential information about McKinsey clients to Rengan – does not address a "material fact."  Indeed, that statement is wholly silent as to the critical issue of whether the defendant sought to corrupt Palecek and obtain material, nonpublic information from him, regardless of whether or not Rengan was successful in doing so.

    For the foregoing reasons, the defendant's request to admit the proffered statement by counsel for David Palecek should be denied.

                                             Respectfully submitted,

                                             PREET BHARARA
                                             United States Attorney

                        By:         _____/s/_____
                                           Christopher D. Frey
                                           Randall W. Jackson
                                           Assistant United States Attorneys
                                           (212) 637-2270/1029

cc:     Daniel Gitner, Esq. (By E-mail)
        Michael Longyear, Esq. (By E-mail)