LANKLER SIFFERT & WOHL LLP
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N. Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

June 29, 2014

**BY FACSIMILE AND ECF**

Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    **United States v. Rajarengan Rajaratnam, 13 Cr. 211 (NRB)**

Dear Judge Buchwald:

      We represent Rengan Rajaratnam in the above matter. We respectfully object to the proposed instruction contained in the government's letter dated June 28, 2014.

      The government proposes to instruct the jury that "the confirmation by an insider of unconfirmed facts or rumors . . . may itself be inside information." (Govt. Ltr. at 2.) The government supports its request by citing a case in which such confirmation by insiders was at issue. (*Id.*) But *this* case has nothing to do with the confirmation by an insider of unconfirmed facts or rumors. Rather, because the insiders in this case never spoke to Rengan about the information at issue, they never confirmed any rumors *to Rengan*. Accordingly, the government's proposed instruction regarding whether an insider "confirmed" a rumor is irrelevant to this case.

      To be clear, there is no evidence that Rengan received any tip or "confirmation" of a fact or rumor from an insider with regard to either Clearwire or AMD. The Clearwire insider, Rajiv Goel, never spoke with Rengan until June 2008—after the Clearwire "chapter" of this case was over. Mr. Goel testified that he had not even met Rengan by March 2008, when Mr. Goel was speaking to Raj about the Clearwire information. (Tr. at 592:22–25.) There is also no evidence—no testimony, phone call, email, or instant message—showing that Raj conveyed to Rengan the information that Mr. Goel gave to Raj.[1]

      Similarly, the AMD insider, Anil Kumar, testified that he did not share confidential

---

[1] This is one reason (of several) that the government will not be able to survive Rule 29 with respect to the Clearwire counts.

Lankler Siffert & Wohl LLP

Hon. Naomi Reice Buchwald
June 29, 2014
Page 2

information with Rengan. (Tr. at 898:12–14 (confirming that he only shared confidential information with Raj).) There is no evidence that Rengan had any idea that Raj got confirmation of any AMD information from an insider.

In addition, it should not be lost that the so-called "rumors" that motivated the government's request for the inapplicable instruction were neither simple "media buzz," nor the kinds of rumors typically at issue in insider trading cases. Rather, at issue in this case is information in the market that originated from the companies, themselves.

First, with respect to Intel's plans to invest in Clearwire, Intel's Sriram Viswanathan testified that he met with several analysts during Intel's Analyst Day on March 5, 2008. (Tr. 444:2–445:4; DX 2706, 2707.) Although he did not purposefully leak confidential information, even his own Investor Relations department criticized a comment he made as communicating Intel's plans. (*See* DX 2710 at 49052DOC000015.) The analyst who heard that comment quickly sent an email *directly to Galleon* indicating that he had met with Intel's head of WiMax (*i.e.*, Mr. Viswanathan) and learned that Intel "would . . . provide $2.0B in capital to this NewCo." (DX 2708; *see also* DX 235.) Accordingly, Intel, itself, told an analyst in a proper meeting during Analyst Day of Intel's plans—and that information ended up in the market and at Galleon.

Second, with respect to Mubadala's investment in AMD, Mr. Kumar testified that the information was widely known in the market because AMD disclosed the plans to "hundreds" of its customers. (Tr. at 861:10.) Mr. Kumar also testified that Mubadala had met with Galleon to tell them about the deal—and there is no allegation (nor could there be) that any such disclosure was improper. (Tr. at 861:7–13). Indeed, Mr. Kumar testified that the AMD information was so well known that it became a "joke" regarding how public it was. (Tr. at 877:12–14). As Mr. Kumar stated, "the Mubadala deal happening was not so top secret." (Tr. at 861:13).

The evidence is clear that another reason the AMD information was public was because AMD's chairman, Hector Ruiz, told Danielle Chiesi about it and she spread the information widely. Mr. Kumar testified that AMD's CEO, Hector Ruiz, shared information with a woman on Wall Street who told "everyone on Wall Street" about AMD. (Tr. 850:7–13; see also Tr. 860 (testimony that Ms. Chiesi was "telling Wall Street a lot of things"). We played various tapes of Ms. Chiesi doing exactly that. *E.g.*, DX 619 ("Hector? How many people have met Hector? … I don't keep my fucking people silent.").

The fact that the AMD information was so public is relevant in this case not because of any insider confirmation, but because that made it impossible for Rengan to understand that Raj

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald
June 29, 2014
Page 3

was sharing information in August 2008 that was not already in the market.[2]

In light of the fact that Rengan never received "confirmation" of any rumor from an insider[3] and that such "confirmation" is not at issue in this case, the government's proposed instruction is misplaced. Indeed, because the insiders never spoke to Rengan about the information at issue—and therefore never confirmed any rumors *to Rengan*—and because Intel, Mubadala, and AMD disclosed information about their respective deals to the public, there is no evidence in the record to support the government's proposed instruction.

We respectfully reiterate our proposed jury instruction concerning the concept of "nonpublic" information, Proposed Jury Instruction No. 30, which is consistent with the issues and evidence in this case:

> [Y]ou must find beyond a reasonable doubt that the information was "nonpublic" at the time it was disclosed. Information is nonpublic if it is not available to the public through sources such as press releases, Securities and Exchange Commission filings, trade publications, analyst reports, newspapers, magazines, television, radio, rumors, word of mouth, websites, internet chat rooms, or online message boards. In assessing whether information is nonpublic, the key word is "available." If information is available, for example, through any of the means I just described, it is public.
>
> However, the fact that information has not appeared in the newspaper or other widely available public media does not alone determine whether the information is nonpublic. Sometimes a corporation authorizes the release of information, or is otherwise willing to make information available to securities analysts, prospective investors, or members of the press who ask for it even though it may never have appeared in any newspaper or other publication. Such information would be considered public. For example, if [the company's] policy was to give out certain information to people who ask for it, that information is public information. Accordingly, information is not necessarily nonpublic simply

---

[2] This is one reason (of several) that the government will not be able to survive Rule 29 with respect to the AMD allegations.

[3] Nor can the government argue that the August 15th tape recorded calls regarding Rengan's conversation with David Palecek concern the confirmation of a rumor. First, Rengan asked a general (and perfectly appropriate) question: "What do you think of AMD?" (GX 513-T at 2:11.) Second, AMD was not Mr. Palecek's client. (Tr. at 289:1–18.) Finally, there is no evidence that Rengan *ever* knew who Mr. Palecek's clients were. Indeed, these are further reasons that the government will not be able to survive Rule 29 in this case.

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald
June 29, 2014
Page 4

> because there has been no formal announcement or because only a few people have been made aware of it. Whether information is nonpublic is an issue of fact for you to decide.
>
> In addition, it is possible for information to be public even if there has been no public announcement and only a small number of people are aware of it, if the information is fully reflected in the price of the stock. In this regard, you may consider, in deciding whether the information was already public before the announcement, whether any rise or fall in the price and volume of the stock that occurred prior to the announcement continued after the announcement. A continuing rise or fall in price and volume may be considered by you as evidence that the information had not yet been fully reflected in the price of the stock until after the public announcement.

(ECF No. 78 at 37–38.)

Respectfully submitted,

Daniel M. Gitner

cc:  AUSA Christopher D. Frey (by email)
     AUSA Randall W. Jackson (by email)