LANKLER SIFFERT & WOHL LLP
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N. Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX     (212) 764-3701

July 2, 2014

**BY FACSIMILE AND ECF**

Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    United States v. Rajarengan Rajaratnam, 13 Cr. 211 (NRB)

Dear Judge Buchwald:

    We respectfully submit this letter in response to the Court's request for guidance on the question of whether the government can use the evidence relating to Clearwire in support of the conspiracy charged in Count One, given that the Court has dismissed the substantive Clearwire counts.

    For the reasons set forth below, the Court's decision with respect to the Clearwire substantive counts mandates that the government be precluded from relying on the Clearwire evidence in connection with the conspiracy count.

    We respectfully ask the Court to inform the jury on Wednesday that the Clearwire counts have been dismissed, that any proof as to insider trading in Clearwire has been stricken and should be disregarded, and that the Court will provide the jury with further instructions at the appropriate time.

A.    **The Court's Decision Precluding Akamai Provides The Appropriate Analysis For Consideration of the Clearwire Evidence In Connection with the Conspiracy Count**

    Given the Court's ruling on Counts Two and Three, the Court should employ the same analysis in addressing the Clearwire issue as the Court already employed in rejecting the Akamai evidence. Under that analysis, there is even greater reason to preclude the Clearwire evidence than there was to preclude Akamai.[1]

---

[1] While the Akamai proof was not charged conduct, the Court's ruling dismissing the substantive Clearwire counts made plain that the Clearwire transaction should never have been charged, because the evidence was insufficient.

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald
July 2, 2014
Page 2

### 1. The Court's Preclusion of the Akamai Evidence as Proof of the Conspiracy

With respect to Akamai, the Court examined the evidence proffered by the government and concluded that any suggestion that Rengan traded in Akamai using inside information was "based on circumstantial and speculative evidence." The Court further found that it was "just as likely, if not more likely" that Rengan had innocent reasons for trading in Akamai. (Akamai Decision, at 3-4.) In reaching that conclusion, the Court relied upon (1) the fact that Rengan's trading patterns in Akamai differed from Raj's trading in Akamai; and (2) the fact that Rengan's trading in Akamai was "in many ways inconsistent with those of someone who knew the inside information." (*Id*. at 4.) The Court found that it was "difficult to explain why someone who knew Akamai would be issuing negative guidance would cover over one-third of this short position right before that guidance was issued," and further found that Rengan's trading was in "stark contrast" to Raj's trading. (*Id*. at 4.) The Court observed that the government's explanations for Rengan's trading in Akamai were "entirely speculative and wholly unconvincing." (*Id*. at 4–5.) After discussing the evidence consistent with innocence, the Court concluded that the government provided "scant evidence that defendant traded Akamai shares on the basis of inside information." (*Id*. at 7.)

On the basis of these findings, the Court precluded any mention of the Akamai trading at trial. First, the Court ruled that the Akamai evidence could "not be admitted as direct evidence of the charged conspiracy" because it was "not particularly probative of insider trading and thus does not help prove the charged conspiracy." (*Id*. at 7, 9.) The Court found that the Akamai trades were neither part of the same series of transactions at issue in the trial, nor "inextricably intertwined with the evidence regarding the charged offense." (*Id*. at 7.) The Court held that under Fed. R. Evid. 403, and under these circumstances, admission of the Akamai evidence would cause "unfair prejudice, undue delay, and needless presentation of cumulative evidence." (*Id*. at 8). The Court pinpointed "at least two types of prejudice," namely, that the jury might conflate Raj's culpability with Rengan's, and that the jury might misuse the alleged insider trading in Akamai as improper propensity evidence. (*Id*. at 8.)

Second, the Court found that the Akamai trades "[did] not demonstrate that the defendant had the knowledge or intent to engage in insider trading." (*Id*. at 9.) The Court concluded that because the evidence did not establish knowledge or intent to engage in insider trading, the Akamai proof "[could not] help establish the knowledge or intent required for the charged conspiracy." (*Id*. at 9.)

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald
July 2, 2014
Page 3

### 2. The Court's Rationale in Excluding the Akamai Evidence As Proof of the Conspiracy Applies With Even Greater Force to the Clearwire Evidence

The observations and findings made by the Court with respect to the Akamai evidence are strikingly similar to the observations and findings the Court articulated in connection with its decision to dismiss the Clearwire substantive counts.

As the Court recognized, there was an insufficient basis upon which a reasonable jury could conclude beyond a reasonable doubt that Rengan received confidential inside information from Raj, that Rengan traded on the basis of confidential information, or that Rengan had knowledge of any personal benefit bestowed upon Rajiv Goel in exchange for that information. (*See* Tr. 1381-82.) In fact, the Court went even further than it did with Akamai, concluding that Rengan's having traded short under the collar constituted clear evidence that Raj did not share all of the Clearwire information with Rengan. (Tr. 1382.)

Moreover, as in its Akamai decision, the Court specifically relied on the fact that Rengan's trading activity differed starkly from Raj's trading activity, and that Rengan's trading activity was inconsistent with the conduct of a person who had received the tip provided to Raj by Goel. *Id.* With respect to some of the inferences the government asked the Court to draw — including the inference that Rengan had knowledge of a personal benefit to Goel — the evidence was nonexistent, and thus did not even rise to the level of "scant."

Just as with Akamai, the government's arguments with respect to the Clearwire evidence were entirely speculative, and therefore provided an inadequate basis as proof of a conspiracy to engage in insider trading. Precisely because the Clearwire evidence did not support the inferences of guilt suggested by the government, that evidence — like the Akamai evidence — is "not particularly probative of insider trading *and thus does not help prove the charged conspiracy.*" (Akamai Decision at 9 (emphasis added).)

Additionally, just as with Akamai, the probative value of the Clearwire evidence is minimal at best, and the danger of unfair prejudice is great. As the Court observed, there is no evidence that Rengan knew Goel and no evidence that he knew of any personal benefit provided to Goel. Nor is there any evidence that Raj passed Clearwire confidential information to Rengan, or any evidence that Rengan would have, or could have, understood that whatever Raj may have discussed with him about Clearwire was confidential. Significantly, Rengan's trading pattern in Clearwire differed substantially from Raj's.

Indeed, now that the Court has found, as a matter of law, that the proof does not establish beyond a reasonable doubt that Rengan engaged in insider trading in Clearwire, the government

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald
July 2, 2014
Page 4

cannot argue otherwise.  Given this, the probative value of the Clearwire evidence is *nil*, because the government is unable to assert that the Clearwire proof establishes insider trading. Moreover, as with Akamai, there can be no credible claim that the Clearwire proof is inextricably intertwined with the AMD proof.  There is no overlap.[2]

      If the jury is allowed to consider the Clearwire evidence as proof of the conspiracy, the defense will be subjected to the very types of unfair prejudice described by the Court in its Akamai decision — namely, the jury will conflate Raj's culpability in Clearwire with Rengan's, and the jury will misuse the alleged Clearwire insider trading as improper propensity evidence. The risk of this unfair prejudice is greater than that posed by the Akamai evidence, because the Clearwire evidence has already been presented and has formed a lynchpin of the government's case for the past two-and-a-half weeks.  Accordingly, unfair prejudice to the defense will result unless the Court specifically instructs the jury to disregard the Clearwire evidence.

---

[2] To the extent the government wants to argue that the Clearwire evidence is relevant for some purpose allowable under Rule 404(b), the risk of prejudice is severe because the government has previously argued that the Clearwire proof is direct evidence of insider trading.  There is no realistic way to ask the jury to consider the Clearwire evidence for a limited purpose.  Indeed, given the present posture of the case — where the government in its opening statement asserted that the Clearwire evidence *would* establish proof beyond a reasonable doubt that Rengan engaged in insider trading (which now we know as a matter of law the proof fails to do), and where that opening statement was followed by several days of testimony concerning Clearwire — it would be impossible to ask the jury to consider Clearwire for any limited purpose.  *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) ("Where there is "an overwhelming probability that the jury will be unable to follow the court's instructions" because the instruction requires the jury to perform "mental acrobatics," and where "the evidence is devastating to the defense … [t]he presumption that a jury will adhere to a limiting instruction evaporates.").

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald
July 2, 2014
Page 5

**B.     It Would Be Error To Allow Consideration Of The Clearwire Evidence As Proof of the Conspiracy**

Even putting aside the Rule 403 analysis employed in the Akamai scenario, it would be error for the Court to permit the jury to use the Clearwire evidence in reaching a verdict on the conspiracy count.

First, the Court found as a matter of law that the proof does not establish beyond a reasonable doubt that Rengan engaged in insider trading in Clearwire. If no inference of guilt on the substantive insider trading charges can properly be drawn from the Clearwire evidence, it necessarily follows that no inference of guilt on the conspiracy to commit insider trading charge can properly be drawn from that same proof.

Conspiracy is "a specific intent crime." *United States v. Hassan*, 578 F.3d 108, 578 (2d Cir. 2008). A conspiracy conviction cannot be sustained unless the government establishes beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute. *Id.* In other words, the government must demonstrate that the defendant had the specific intent to both engage in the conspiracy and commit the underlying crime. *Id.*; *see also United States v. Gilberto Valle*, 12 Cr. 847 (PGG) (Memorandum Opinion & Order) (June 30, 2014). In other words, the government must prove that Rengan had the specific intent to engage in insider trading, regardless of whether the conspiracy resulted in actual insider trading.

Because the specific intent requirement includes the various elements the Court found lacking when it dismissed Counts Two and Three — *ie.*, "that Rengan traded in Clearwire on the basis of inside information obtained in violation of a duty of confidentiality and with a knowledge that the tipper receive a personal benefit from a tip he provided to Raj," (Tr. 1383) — the jury cannot use the Clearwire evidence in support of a verdict of guilty on the conspiracy count.

The fact that Count One charges a conspiracy to commit insider trading, rather than a conspiracy to trade in specific stocks, does not change the analysis.[3] As the Court recognized with respect to the Akamai proof, even though the conspiracy is couched as a general conspiracy to commit insider trading, the proof offered in support of it must still support a finding of intent to engage in insider trading. As to Clearwire, that proof has been found insufficient as a matter

---

[3] The government's attempt to characterize Count One as a broad conspiracy in which trading in CLWR and AMD were "simply two of the alleged means by which the conspirators furthered the object of the conspiracy" is absurd. This flies in the face of the government's earlier characterizations that this conspiracy involved "only" two stocks, as well as the government's concession that the essential facts were undisputed.

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald
July 2, 2014
Page 6

of law, so equally as a matter of law, it cannot support a finding of intent to engage in insider trading.

      Second, and perhaps more significantly, if the Court were to allow the government to argue that the Clearwire proof supports the conspiracy count, then the Court would be creating an opportunity for the jury to convict based on the Clearwire evidence. In other words, one or more jurors might conclude that Rengan was guilty of the conspiracy count on the basis of his conduct in relation to Clearwire. That would be an impermissible use of the Clearwire evidence.

      The Court has found the evidence of a Clearwire insider trading scheme to be insufficient. (Tr. 1382.) Accordingly, the jury cannot legally find Rengan guilty of Count One based on the Clearwire proof. If the Court permitted the jury to consider the Clearwire evidence, the Court would permit jurors to base a conspiracy conviction on that insufficient proof. A general verdict of "guilty" on Count One could not stand because such a verdict might have been based on proof found insufficient as a matter of law. *See United States v. Slay*, 858 F.2d 1310, 1315 (8th Cir. 1988) (where a jury is permitted to rely on two or more independent grounds, and one of those grounds is insufficient, a "general verdict must be set aside . . . because that verdict may have rested exclusively on the insufficient ground."). Not only does the government not dispute the possibility that jurors could convict based on the Clearwire proof, but also argues that a guilty verdict on Count One could be premised on the Clearwire proof. (Gov't Letter, at 2).

      The risk that the jury might improperly rely on the Clearwire evidence to convict Rengan on Count One can only be eliminated if the Court precludes the jury from considering the Clearwire evidence as proof of the conspiracy. Put another way, because Rengan's Clearwire trading did not constitute illegal insider trading, the jury may not be permitted to base a Count One verdict on the Clearwire proof.

LANKLER SIFFERT & WOHL LLP

Hon. Naomi Reice Buchwald
July 2, 2014
Page 7

## Conclusion

For the foregoing reasons, the defense respectfully requests that the Court preclude the government from arguing from the Clearwire proof in summation. We ask the Court to inform the jury on Wednesday that the Clearwire counts have been dismissed, that the proof of trading in Clearwire has been stricken and should be disregarded, and that the Court will provide the jury with further instructions at the appropriate time.

Respectfully submitted,

Daniel M. Gitner

cc:  AUSA Christopher D. Frey (by email)
     AUSA Randall W. Jackson (by email)